**In the Matter of Thomas FORTNEY and LaVonna Fortney, Debtors–Appellees,**

**Appeal of Daniel R. FREUND, Chapter 12 Trustee.**

**No. 94–1208.**

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1994.

Decided Sept. 29, 1994.

Daniel R. Freund, pro se.

Robert E. Krambs, Viroqua, WI, for Vernon County.

* Honorable Albert J. Engel, of the United States Court of Appeals for the Sixth Circuit, sitting by

Galen W. Pittman (argued), Jeffrey C. Mochalski, Johns & Flaherty, La Crosse, WI, for Thomas Fortney and LaVonna Fortney.

Before ENGEL,* BAUER and KANNE, Circuit Judges.

ENGEL, Circuit Judge.

In this farm bankruptcy case, we must determine if Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1201–1231, compels a bankruptcy judge to extend the repayment of a secured tax debt beyond the three year duration of the debtors' reorganization plan. The bankruptcy judge below determined that the debtors, Thomas and LaVonna Fortney, should satisfy their $18,569.76 tax obligation to Vernon County within three years. The Chapter 12 Trustee, Daniel Freund, objects to confirmation of the Fortneys' plan, arguing that the taxes should be repaid at a much slower pace, so that more farm income will be available to satisfy the claims of unsecured creditors. The district court approved the plan over the Trustee's objections, concluding that Chapter 12 vests the bankruptcy court with discretion to structure an appropriate repayment schedule for secured debts. For the following reasons, we AFFIRM the judgment of the district court.

## I. Background

Chapter 12 of the bankruptcy code governs reorganization of family farms. "Congress created Chapter 12 in 1986 in order to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." *In re Kerns,* 111 B.R. 777, 788 (S.D.Ind.1990) (citation omitted); *In re Bowlby,* 113 B.R. 983, 988 (Bankr.S.D.Ill.1990).

The Fortneys own a farm in Viroqua, Wisconsin, near La Crosse. The Fortneys filed for bankruptcy relief on September 4, 1992, and the bankruptcy court for the Western District of Wisconsin approved their reorganization plan on June 2, 1993. On January 11, 1994, the district court affirmed the decision of the bankruptcy court over the objections of the Chapter 12 Trustee.

designation.

The Fortneys have two secured real estate obligations: a tax lien of $18,569.76 held by Vernon County, and a mortgage of $140,-430.24 held by AgriBank. Their plan provides for repayment of their tax debt over a span of three years, while the mortgage is scheduled for repayment over a twenty year period.

The Fortneys have more than $90,000 in unsecured debt. During the three years that the plan will be in effect, the unsecured creditors are to receive: (1) a minimum payment of $7,200, and (2) 40% of the Fortneys' gross annual farm income in excess of $150,-000. If the Fortneys successfully complete the payments scheduled under the plan, the remaining unsecured debts will be discharged.

## II. Confirmation of a Chapter 12 Plan

■ Chapter 12 contains two confirmation requirements designed to protect unsecured creditors. Section 1225(a)(4) sets out the well-known "best interests of the creditors" test, which denies confirmation to any plan which provides unsecured creditors with less compensation than they would receive upon liquidation of the farm. *See* 5 COLLIER ON BANKRUPTCY ¶ 1225.02[4] (15th ed. 1993). Liquidation of the Fortneys' farm would provide their unsecured creditors with a total of $6,584.42. By offering the unsecured creditors a minimum payment of $7,200, the Fortneys' plan satisfies the best interests test.

Chapter 12 contains a second protection for those unsecured farm creditors who object to confirmation of a reorganization plan: the "disposable income" test. Under this test, unsecured creditors who object to confirmation of the debtors' plan are guaranteed to receive *at a minimum* all of the disposable income earned by the farm while the plan is in effect:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless ... the plan provides that all of the debtor's projected disposable income to be received [during the pendency of the plan] ... will be applied to make payments under the plan.

11 U.S.C. § 1225(b)(1)(B). *See, e.g., In re Fleshman,* 123 B.R. 842, 843–44 (Bankr. W.D.Mo.1990); *In re Wobig,* 73 B.R. 292, 293 (Bankr.D.Neb.1987); *In re Citrowske,* 72 B.R. 613, 616 (Bankr.D.Minn.1987).

The Fortneys' plan "shall run for thirty-six (36) months." During this period, unsecured creditors are entitled to receive all of the Fortneys' "disposable income"—that portion of the farm income "which is not reasonably necessary ... for the[ir] maintenance or support" or "for the continuation, preservation, and operation of the[ir] business." 11 U.S.C. § 1225(b)(2).

■ The disposable income test allows the debtor to retain a sufficient but not extravagant level of income. As one court explained:

> A fundamental purpose of the disposable income provision is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims....

> This Court ... will not permit [the debtor] to acquire goods or services not reasonably necessary for support at the expense of the unpaid, unsecured creditors. The purposes of [the disposable income test] would be ill-served if the Court were to allow the debtor in the instant case to [finance] purely recreational property not reasonably necessary for maintenance or support of the debtor ... while his general unsecured creditors are to receive, over an extended period of time, less than half of the total amount of their claims.

*In re Hedges,* 68 B.R. 18, 20–21 (Bankr. E.D.Va.1986).

■ Unfortunately, the disposable income test cannot provide all unsecured creditors with compensation, because not all debtors will be able to generate disposable income. By definition, disposable income represents "left overs"—that portion of the farm income remaining after the deduction of those payments "necessary" for the farmer's subsistence and for operation of the farm. *See* 11 U.S.C. § 1225(b)(2), *supra.* If the bankruptcy court determines that all of a farmer's income is needed to satisfy secured

obligations, a plan which generates no disposable income may be confirmed—despite providing little compensation to the unsecured creditors. As a result, the impact of the disposable income test in any particular case depends to a large extent upon the margin by which the debtor's income exceeds his or her expenses. A debtor whose income greatly exceeds expenses may provide unsecured creditors with a substantial amount of disposable income, while a debtor with a slim profit margin may generate hardly any disposable income at all.

### III. The Proper Amortization of Secured Debts

The Trustee objects to the repayment of Vernon County's secured tax claim within three years. Pointing to the twenty year amortization of the Fortneys' mortgage obligation, the Trustee would have the bankruptcy court prolong the tax payments in a similar fashion. Stretching such payments out over a longer period would substantially reduce the size of the Fortneys' monthly payments to the county. The Trustee's motivation in reducing the size of the Fortneys' monthly secured debt payments is to increase the amount of disposable income available for unsecured creditors.

The Trustee argues that there is no basis in the Code for amortization of the secured tax claim over a shorter period than the mortgage claim. The Trustee concedes that the Code grants *unsecured* tax claims higher priority than ordinary unsecured claims, 11 U.S.C. § 507(a)(7), but he insists that all *secured* claims (including secured tax claims) have equal priority under the Code. Furthermore, the Trustee suggests that the Code requires the bankruptcy court to amortize secured debts over the longest possible time span, in order to maximize the amount of disposable farm income available for unsecured creditors.

The district court concluded that the bankruptcy court was permitted to amortize the tax claim and the mortgage claim over different time periods. However, the district court did not—as the Trustee suggests—

justify the three year repayment of the taxes on the ground that secured tax claims deserve preferential treatment. In fact, the district court explicitly rejected any such notion:

> The Trustee is correct in his contention that Chapter 12 does not establish a category of secured claims requiring priority status over other secured claims. There is no provision in the Code which **requires** that real estate tax liens be amortized within the three to five year pendency of a plan.

In the district court's view, the Fortneys are permitted to repay the taxes over three years and the mortgage over twenty years because Chapter 12 provides the bankruptcy court with discretion to fashion appropriate secured debt repayment schedules. Given such discretion, the district court concluded that the bankruptcy court's approach sought to accommodate important differences between a tax lien and a mortgage:

> [N]othing in the Code requires that all secured claims be paid within the same time period. Here the real estate tax lien is to be paid within three years and the AgriBank claim is to be paid within twenty years. There are valid reasons for differentiating between these claims. Counties unlike mortgage holders are not in the business of long term financing. Amortizing the $140,430 AgriBank claim over three years would make the payments prohibitive.

Within this framework, the question on appeal narrows to whether Chapter 12 dictates any particular amortization schedule for the repayment of secured debts. Because the Trustee challenges the district court's interpretation of the Bankruptcy Code, we review *de novo* the legal conclusions drawn below. *In re West*, 22 F.3d 775, 777 (7th Cir.1994) ("we review ... conclusions of law *de novo*").

Looking first to the text of Chapter 12, we find a general rule that all payments under a reorganization plan must be made within three years. 11 U.S.C. § 1222(c).[1] The

---

1. 11 U.S.C. § 1222(c) provides:

Except as provided in subsections (b)(5) and

three year repayment of the Fortneys' overdue taxes certainly adheres to this statutory directive.

As the Trustee enthusiastically notes, an exception to the three year repayment rule can be found in 11 U.S.C. § 1222(b)(9). Under that section, the bankruptcy court may approve plans which "provide for payment of secured claims ... over a period exceeding the period permitted under section 1222(c)." The court's "[d]iscretionary" power to prolong secured debt repayment has been described as Chapter 12's "most significant provision affecting the rights of secured claimants." 5 COLLIER ON BANKRUPTCY ¶ 1222.04.

Although section 1222(b)(9) clearly authorizes the bankruptcy court to extend secured debt repayment in certain circumstances, the text of this section does not indicate when such extension is appropriate or desirable, nor does it indicate that such extension is ever mandatory. Thus, the district court interpreted section 1222(b)(9) as *permitting* prolonged amortization of secured debts, but not *requiring* deviation from the three year repayment rule in any particular case. The Trustee, in contrast, argues that by permitting long-term amortization of secured debts, section 1222(b)(9) implicitly repeals section 1222(c)'s three year repayment rule. In place of the three year repayment rule found in the Code, the Trustee implores us to require slow repayment of secured debts whenever unsecured creditors face a risk of receiving inadequate compensation.

 We find no merit in the Trustee's argument that Chapter 12 prohibits repayment of the Fortneys' overdue taxes within three years. No statutory language suggests that amortization over a longer period is compulsory. The only text on point is the general three year repayment rule found in section 1222(c), *supra* note 1, which clearly undermines any suggestion that the Code requires slow repayment of secured claims.

Although section 1222(b)(9) permits the repayment of secured debts over a period exceeding three years, there is no requirement

of such extension in any particular circumstance. A popular bankruptcy treatise characterizes section 1222(b)(9) as a discretionary provision. 5 COLLIER ON BANKRUPTCY ¶ 1222.04. Certainly Congress could have made such extensions mandatory if it so chose, but we refuse to write such a substantial provision into the statute in the absence of any textual or historical support.

The Trustee insists that a requirement of long-term amortization can be found in section 1225(b)(1)(B), the disposable income test. As the Trustee notes, this statutory provision prevents the Fortneys from using disposable income to repay secured obligations. *See, e.g., Fleshman, supra,* 123 B.R. at 846–47; *Wobig, supra,* 73 B.R. at 293; *Citrowske, supra,* 72 B.R. at 616. According to the Trustee, the unsecured creditors' right to receive disposable income carries with it a corresponding right to restructure the Fortneys' secured debts in a fashion which maximizes the amount of disposable income flowing to unsecured creditors.

 We cannot agree with the Trustee that the disposable income test implicitly grants unsecured creditors the right to insist upon any particular amortization of secured debts. Congress has given unsecured creditors two specific protections: the best interests test and the disposable income test. The federal courts have no power to add novel protections to this precise list, especially at the expense of creditors with secured interests. The disposable income test guarantees that unsecured creditors will receive any farm income remaining after necessary expenses are paid. The Fortneys' plan, which allocates 40% of the gross annual farm income over $150,000 to the unsecured creditors, obeys this command. The Fortneys' payments to Vernon County, upon which the Trustee fixates, do not even implicate the disposable income test, because the income used to make these payments *is not disposable.* The statutory definition of disposable income excludes all "expenditures necessary for the continuation, preservation, and operation of the debtor's business." 11 U.S.C.

(b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer

period, but the court may not approve a period that is longer than five years.

§ 1225(b)(2)(B), *supra.* Because payments to the county scheduled under the Fortneys' plan are "necessary" to prevent foreclosure, the unsecured creditors have no claim to this income.

 Finally, we reject the Trustee's suggestion that all secured debts must be extended if the bankruptcy court permits the debtor to extend the repayment of any one particular secured obligation. No Code provision requires the amortization of all secured debts on a uniform schedule. Chapter 12 of the Bankruptcy Code generally requires that all payments due under a plan must be made within three years. 11 U.S.C. § 1222(c). An exception to this rule, 11 U.S.C. § 1222(b)(9), vests the bankruptcy court with discretionary authority to extend repayment when appropriate. Where the Bankruptcy Code "commits [such a] decision ... to the discretion of the court," the bankruptcy court's exercise of that discretion will only be reviewed on appeal for abuse. *In re Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir.1994).

We find no abuse of discretion in this case. The bankruptcy court articulated valid and meaningful reasons for extending the repayment of the Fortneys' mortgage, but for not extending the repayment of their overdue taxes. Any shorter term for repayment of the mortgage would burden the farm with intolerable monthly obligations. In contrast, the bankruptcy court determined that the Fortneys could manage to pay the tax debt while the plan was in effect, so no extension of time was necessary. Furthermore, the county—unlike the bank—is not a voluntary creditor and not in the lending business. The citizens, schools, police, and parks of Vernon County need not wait for their payments like some stockholders in a financial venture. The important differences between the two debts provides ample justification for amortizing them differently. Accordingly, we agree with the district court that no Code provision prohibits the repayment of the Fortneys' secured tax debt within three years.

## IV. Lack of Good Faith

The Trustee argues that the Fortneys' plan was not offered in good faith, as required by 11 U.S.C. § 1225(a)(3), because slower repayment of the tax debt would provide unsecured creditors with more disposable income. Because it is possible under section 1222(b)(9) for the Fortneys to repay their taxes more slowly, and therefore increase the disposable income flowing to the unsecured creditors, the Trustee argues that the Fortneys' proposal to pay the county in three years exhibits bad faith. The Trustee complains that such prompt repayment—and the resulting reduced level of disposable income—unfairly and unnecessarily increases the amount of unsecured debt which will ultimately be discharged.

In evaluating whether a plan was proposed in good faith, this court has declined "to adopt a specific test" because "good faith is a term incapable of precise definition." Instead, we prefer to "look to the totality of the circumstances and, thereby, make good faith determinations on a case-by-case basis." *In re Love,* 957 F.2d 1350, 1355 (7th Cir.1992). "[W]e will not overturn" the finding of good faith made by the bankruptcy court below "unless it is clearly erroneous." *In re Andreuccetti,* 975 F.2d 413, 420 (7th Cir.1992).

Looking to the specific facts of this case, we see that an overdue tax bill and a farm mortgage will be repaid on different schedules. As we discussed at length above, the proper amortization of secured debts is a question the Code does not specifically answer. Furthermore, we find no indication in the Code that the two debts must be amortized identically. Given this flexibility, the question of good faith necessarily reduces to whether the Fortneys' plan represents "a sincere effort at repayment" of their obligations, "or [i]s instead an effort to thwart repayment." *In re Schaitz,* 913 F.2d 452, 453–54 (7th Cir.1990). The bankruptcy court felt that the Fortneys' debt repayment schedules balanced the peculiar needs of Vernon County and AgriBank against the Fortneys' ability to make monthly payments. The Trustee, on the other hand, insists that the prompt repayment of the tax debt was

motivated by a desire to limit the compensation available for unsecured creditors.

■■■ Given the deferential standard for reviewing the bankruptcy court's determination that the plan was proposed in good faith, *Love,* 957 F.2d at 1355; *Andreuccetti,* 975 F.2d at 420, we are only entitled to set this finding of fact aside if it is clearly erroneous—which it is not. The Trustee has adduced no evidence that the Fortneys wish to avoid any of the obligations they have incurred, other than the fact that the unsecured creditors might receive greater compensation if the county were repaid more slowly. With nothing else to support it, such an assertion does not lead us to conclude that the decision of the bankruptcy court is clearly erroneous. As we noted at length above, the decision to repay the county in three years furthers several legitimate goals. It comports with the directive in section 1222(c) that debts should ordinarily be repaid in three years. Prompt repayment of the overdue taxes also permits the county to continue delivering essential services to all of its residents. Given the bankruptcy court's wide discretion to fashion an appropriate repayment schedule for secured debts, and given the valid reasons for promptly repaying the taxes, the bankruptcy court's finding of good faith was not clearly erroneous.

Accordingly, the judgment below is AFFIRMED.