# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2043

BART HARRISON DYE,

*Debtor-Appellant,*

*v.*

UNITED STATES OF AMERICA, FARM SERVICES
AGENCY (FSA),

*Creditor-Appellee.*

IN RE: BART HARRISON DYE,

*Debtor.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 02 C 186—**Richard L. Young**, *Judge.*

_____

ARGUED NOVEMBER 6, 2003—DECIDED MARCH 10, 2004

_____

Before CUDAHY, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* After Bart Harrison Dye filed for
Chapter 12 bankruptcy, a dispute arose as to his ownership
rights to a family farm. The bankruptcy court determined
that Dye had earlier deeded the farm to the government in
lieu of foreclosure, so he no longer owned it. Instead, the
court found that he had exercised an option to purchase the

farm, and was thus required to pay $828,706 or forfeit his interest. After Dye failed to make the payments for the farm within 60 days, his Chapter 12 bankruptcy petition was dismissed. Dye appealed and the district court affirmed. He now appeals to this court and we also affirm.

## I.

Dye filed for Chapter 12 bankruptcy protection on August 17, 2001, seeking relief from debts that arose from a mortgage he had taken on his family farm in 1981 with the Farm Service Agency's (FSA) predecessor.[1] Dye's relationship with the FSA began in the early 1980's when the agency recorded three mortgages against property in which Dye and his wife had varying interests. Dye experienced financial difficulties and entered into an arrangement with the FSA on September 7, 1984, whereby he and his wife conveyed the farm to the FSA and were released from all personal liability on the mortgages. In other words, this 1984 transaction served as a voluntary conveyance in lieu of foreclosure. As part of this conveyance, Dye received a credit of $525,000 for his interest in the farm and the FSA forgave the balance of a loan to Dye of $321,764.23 in principal and $33,110.63 in interest. In order to acquire the farm, FSA also paid Alvin Dye (A. Dye), Dye's brother, $120,000 for his interest in a portion of the farm. The FSA recorded the deed in its name and then claims to have rented the farm to others for a period of approximately five years.

---

[1] Prior to October 1, 1996, the FSA was known as the Farmers Home Administration. For ease of reference, we will refer to both agencies as FSA.

In a letter dated December 22, 1989, the FSA advised Dye of a new program under which former owners of foreclosed property could enter into a lease back/buy back agreement with the FSA. On June 6, 1991, Dye entered into a five-year lease of the farm that he formerly owned. Under this lease, Dye had the right to exercise an option to buy the farm before the expiration of the lease, subject to certain terms and conditions, including the requirement that the balance of the purchase price had to be paid in cash at closing.

The FSA claims that Dye exercised the option to purchase the farm by writing to the agency on May 13, 1996. He was sent a standard sales contract to sign and return to the FSA. The FSA never received the contract. Instead, Dye filed an administrative appeal regarding the purchase price of the farm and certain fish and wildlife easements on the farm. After losing the administrative case, Dye filed a petition for review of the administrative determination in U.S. District Court, and a judgment was entered on April 10, 2002 in favor of the government. In the meantime, Dye filed for Chapter 12 bankruptcy on August 17, 2001, and asserted in his schedules that he was the owner of the farm and that the "USDA Farm Service Agency" had a first mortgage on the property. Dye's intent in filing Chapter 12, as revealed by his counsel at the bankruptcy hearing, was to treat the money due under a so-called "installment land sales contract" as a secured debt and cram it down, stretching the payments out over 20 or 30 years.

During Dye's bankruptcy proceedings, the FSA asserted ownership of the farm and requested that the court enter an order establishing a time for Dye to assume or reject an option to purchase the land. In response, Dye claimed that he never relinquished what he perceived to be his equitable interest in the property, and that the 1984 transaction resulted in him giving the FSA a deed held "in lien of trust."

He claims that he lived and worked on the farm ever since the 1984 transaction and has made payments to the FSA in the amount of $396,902.92. Accordingly, he asserts an equitable interest in the farm and that his arrangement with the FSA constitutes an installment land sales contract. He also denies entering into the five-year lease with an option to purchase, and, naturally, denies sending a letter to exercise any option.

The bankruptcy court rejected Dye's arguments and on September 23, 2002, pursuant to 11 U.S.C. § 365(d)(2), ordered that Dye, within 60 days, either assume the option to purchase the farm (by tendering the purchase price of $828,706) or that the option would be deemed rejected. Dye did not tender payment, but instead appealed to the district court without requesting a stay of the 60-day period. The district court affirmed the bankruptcy court's ruling. Dye now appeals to this court.

## II.

The findings of fact of the bankruptcy court are reviewed for clear error. *In re Generes*, 69 F.3d 821, 824-25 (7th Cir. 1995). Conclusions of law are reviewed de novo. *See Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). This appeal involves application of 11 U.S.C. § 365(d)(2) of the Bankruptcy Code, which provides, in pertinent part:

> In a case under chapter . . .12 . . . of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

Pursuant to this provision, the bankruptcy judge determined that on June 6, 1991, Dye entered into a five-year lease with an option to purchase the farm that he formerly owned. The bankruptcy judge also determined that Dye exercised his option to purchase on May 13, 1996, but failed to follow through by tendering the purchase price. These findings formed the framework for the bankruptcy judge's decision to order Dye to follow through with exercising the option by tendering the purchase price for the farm within 60 days, or to forfeit the option. Under the bankruptcy court's ruling, Dye has forfeited any interest in the farm because he apparently did not have the financing to follow through with the exercise of the option within the 60-day period and did not request a stay of the 60-day period.

Dye does not challenge the bankruptcy court's authority under 11 U.S.C. § 365(d)(2) to order an executory contract or lease to be assumed or rejected. Instead, he challenges the lower court's underlying findings that he: 1) relinquished full title to the farm in 1984 to the FSA; 2) then entered into a lease with an option to purchase the farm in 1991; and finally, 3) exercised the option to purchase in 1996. Accordingly, we begin the analysis by reviewing the 1984 transaction.

The record reveals that Dye and his wife executed a general warranty deed on June 21, 1984, and the FSA recorded this deed in its name on September 7, 1984. Dye acknowledges that the transfer was voluntary, but, as best we can tell, he now argues that his conveyance was in fact an equitable mortgage or installment land contract disguised as an absolute conveyance. Whether an instrument is a mortgage or absolute conveyance is governed by the intent of the parties at the time the transaction is undertaken, and in assessing intent we may look at extrinsic or parol evidence if necessary. *See, e.g., Matter of Willows of Coventry,*

*Ltd. Partnership*, 154 B.R. 959, 963 (Bankr. N.D. Ind. 1993) (citing *Barber v. Barber*, 70 N.E. 2d 185, 187 (Ind. Ct. App. 1946)).

Dye offers no evidence, extrinsic, parol, or otherwise, to support his equitable mortgage/land contract theory. An appellant's brief must "contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28 (a)(9)(A). But Dye cites nothing in the record for this court to review. He claims that he lived on the farm for the entire time after the 1984 transaction, and paid the FSA what he refers to as mortgage payments. While this argument is inherently plausible, Dye fails to cite the record, and after our independent review we conclude that there is no evidence in the record for this position. Dye had the opportunity to develop the record at the lower court level (by testimony, affidavit, payment receipts, etc.),[2] but did not. The FSA, for its part, has developed the record, at least as to this issue.[3]

---

[2] Bankruptcy Rule 9017 expressly makes the Federal Rules of Evidence and a portion of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings.

[3] We note also that the FSA has also failed to set forth evidence concerning what happened with the property between the years 1984 and 1991. These are the years in which Dye's attorney claims that Dye made payments totaling $396,902.92 to the FSA. The FSA claims, without evidence, that it leased the property to other parties during this time—while Dye claims that he leased the property to other parties during this time and forwarded the payments to the FSA. This rather monumental discrepancy could have been easily cured had either party, especially Dye, submitted documents to demonstrate which (if either) claim is correct.

The FSA does cite to a copy of a warranty deed in the record[4] that indicates that Bart H. Dye and Donna F. Dye conveyed four tracts of land totaling just over 411 acres to the United States through the FSA. The FSA claims that any payments made by Dye were the result of his holdover tenancy. The courts below cited several reasons to support the finding that the 1984 transaction constituted an absolute conveyance of Dye's entire interest in the farm. For example, the district court cited the Release From Personal Liability given by the FSA to the Dyes acknowledging the conveyance of the real property. This document provided that Dye was released from all personal liability for past indebtedness on the property and did not include any language regarding redemption. In addition, the district court cited the FSA's purchase of A. Dye's interest in the farm as inferential evidence of the FSA's intent, through the 1984 transaction, to own the entire interest in the farm. Finally, in 1989, the FSA sent a letter to Dye advising him that "*[t]he farm that you once owned* may be available for you to buy or lease under certain conditions." (Emphasis added.) This evidence is adequate to uphold the district court's finding that Dye conveyed his entire interest in the farm to the FSA in 1984, particularly since we have no contradictory evidence from Dye.

Next, we consider whether Dye entered into a five-year lease with an option to purchase. The lower courts cited the above-mentioned 1989 letter from the FSA and Dye's execution of a five-year Lease of Real Property with an option to purchase the farm that he previously owned. Although Dye claims he did not enter into a lease, the record includes a copy of a lease with an option to purchase, signed by the

---

[4] *See* Affidavit of C. Brent Kerns, Farm Loan Program Chief, FSA, Indiana, Exh. C.

FSA as lessor and Dye as lessee on June 6, 1991. The declaration of Brent Kerns, Indiana's FSA Chief, serves to authenticate this document. Dye does not challenge the authenticity of his signature on the lease. This evidence thus supports the finding that Dye in fact entered into a lease with an option to purchase the farm.

Unfortunately, the evidentiary record breaks down again as we next examine the district court's finding that Dye exercised his option to purchase on May 13, 1996. The FSA cites a November 4, 1997 letter from Paul Singleton, FSA Manager of Farm Loan Programs, addressed to Eric Allan Koch. This letter indicates that an agreement had been reached regarding the sale of the "Dye" farm, but fails to indicate the parties to such an agreement. Moreover, there is no evidence in the record explaining Koch's identity or role in this case. While this letter was apparently sent to Dye as well, there is no evidence that Dye responded. Of course, Dye denies that he responded. Thus, the Koch letter is insufficient to establish that Dye exercised an option to purchase the farm.

As evidence that Dye exercised the option, the FSA attempts to rely on Kerns' assertions that Dye pursued an administrative appeal regarding certain conservation easements and to dispute the purchase price of the real estate. However, this begs the question of whether Dye manifested an intent to exercise his option to purchase since the actual administrative appeal is missing from the record. For all we know, Dye's intent to exercise the option could have been conditioned on the outcome of the administrative appeal. More importantly, an option is a contract, *see Caisse Nationale De Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1272 (7th Cir. 1996), and the May 13, 1996 "writing" wherein the FSA claims Dye exercised the option is missing from the record without explanation. While Kerns testified to the existence of this letter at the bankruptcy hearing, we

remind the FSA of the best evidence rule, Fed. R. Evid. 1002, and its obligation to produce the actual key document showing that the option was exercised.[5] *See, e.g., Dugan v. R.J. Corman Railroad Co.*, 344 F.3d 662, 669 (7th Cir. 2003).

Due to the lack of admissible evidence concerning Dye's exercise of the option, we cannot uphold the district court's decision ordering him to exercise or forfeit the option. Accordingly, there is no evidence of an executory contract or unexpired lease necessary for applying 11 U.S.C. § 365(d)(2). However, we are permitted to affirm on any basis identified in the record that was argued below. *Payne v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998). The five-year lease expired in 1996, and the option to purchase arising from that lease has long since lapsed as a matter of law. *See Chicago Tribune Co. v. National Labor Relations Board*, 965 F.2d 244, 248 (7th Cir. 1992). As stated, the record reveals that Dye transferred his entire interest in the farm in 1984. According to the record, he then lacked an interest in the property until he signed the 1991 lease with an option to purchase. By the time he filed the bankruptcy petition in 2001, his option had lapsed and he was without any other interest in the farm. The family farm that Dye formerly owned was improperly listed on his bankruptcy schedules.

Dye's lawyer conceded at a hearing before the bankruptcy judge that Dye was pursuing Chapter 12 in an attempt to cram down the debt related to his installment land sales contract. But there was no installment land sales contract.

---

[5] The likely explanation for the missing document is that it was lost. If so, Kerns' testimony that the original was lost or destroyed would suffice under Fed. R. Evid. 1004, and we could then rely on Kerns' declaration to find that Dye exercised the option. However, as the record stands, the portion of Kerns' declaration referring to the document is inadmissible because it violates the best evidence rule.

The only "sale" of the land was the 1984 deed conveying the property from the Dyes to the United States. There is no other farm-related debt arising from any other transaction evidenced in the record. As stated above, Dye's 1984 transaction was an absolute transfer that released him from all liability on the farm. He did not enter into an installment sales contract. Moreover, he cannot cram down money due under the lease with an option to purchase because he denies exercising the option and there is no evidence that he exercised it. His bankruptcy petition was correctly dismissed since he has lacked an ownership interest in the former family farm since 1984—before the enactment of Chapter 12 in 1986—and thus has no chance to keep land with which he has already parted.[6] *Cf. In Re Thomas Fortney*, 36 F. 3d 701, 703 (7th Cir. 1994) ("Congress created Chapter 12 in 1986 in order to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land.") (quotation omitted). We are unaware of any grounds under Chapter 12 to revive an interest in land that has been lost before the filing of the bankruptcy petition.[7]

---

[6] The FSA argued below that Dye lacked any interest in the property. This argument became obscured by the focus on the option contract and the executory contract order under 11 U.S.C. Section 365(d)(2) of the Bankruptcy Code. Whether Dye exercised the option or not, the ultimate outcome is the same—he has no interest in the farm. In addition, Dye's petition would be dismissed in any event because he conceded at oral argument that the government has leased the farm to others and he is thus not an owner or operator of a farming operation as defined in 11 U.S.C. § 101(18)(A).

[7] Dye waives his argument that the 1984 arrangement clogged his equitable right of redemption and violated Indiana statutory law by raising it for the first time in his reply brief. *See, e.g., Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 n.5

(continued...)

### III.

This relatively simple case was complicated by an incomplete record coupled with Dye's counsel's attempts to confuse the 20-year history of the ownership-leasehold interest concerning the land parcels in question.[8] This has forced us to approach "playing archaeologist" with the record, a task for which we are ill-suited in our appellate role. *See DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999). Nevertheless, the district court correctly dismissed Dye's case because he transferred his entire interest in the farm in 1984 and his option to purchase the farm has lapsed since the expiration

---

[7] (...continued)
(7th Cir. 1994). In any event, he admits that the 1984 conveyance was voluntary. His various other contentions are all irrelevant or waived due to his failure to develop the argument. *See, e.g., Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

[8] At oral argument, Dye's counsel claimed that he did not "see an indication" that Dye leased anything. However, the record clearly reveals that Dye signed a lease in 1991, and counsel later admitted that Dye signed what he terms a "form letter." Counsel states in briefs that Dye signed a "quit-claim deed" in 1984 and that the transaction was merely to release his wife, with whom he was in the process of a divorce, from liability on the mortgage. However, instead, the record reveals that Bart Dye and his wife signed a general warranty deed—Bart's brother, Alvin, signed the quit-claim deed. Also, the release language releases both Dye and his then-wife from liability. Finally, at the hearing before the bankruptcy judge, counsel made the obviously inaccurate assertion that Dye received "nothing" for the deed in 1984. However, the evidence clearly shows that Dye received a release of liability for his previous indebtedness that exceeded the value of the land.

of his lease in 1996. Dye is thus unable to take advantage of Chapter 12 relief. We therefore AFFIRM the judgment of the district court.

A true Copy:

      Teste:

             _____

             *Clerk of the United States Court of Appeals for the Seventh Circuit*