Tommie J. WILLIAMS, Plaintiff–
Appellant,

v.

ARROW CHEVROLET, INC.,
Defendant–Appellee.

No. 04–2056.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 13, 2005.*

Decided Jan. 18, 2005.

Tommie J. Williams, Chicago, IL, pro se.

Lori Vanderlann, Best, Vanderlaan & Harrington, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and SYKES, Circuit Judges.

ORDER

Tommie Williams sued his former employer, Arrow Chevrolet, Inc., claiming that he suffered discrimination because he is African American and a Muslim. The district court granted summary judgment for Arrow, and Williams timely filed this *pro se* appeal. We affirm.

Williams worked intermittently at Arrow as a car sales representative from 1988 to 1992, and again from 1997 to 1999. In August 1999 he was promoted to management, where he worked until his employment at Arrow ended in October of

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

that year. The parties dispute whether he quit or was terminated.

In August 2000, Williams filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that he had suffered racial and religious harassment and that he was fired because of his race. In September 2001, after the EEOC issued a right-to-sue letter, Williams and three other African–American car salesmen initiated this lawsuit with the aid of counsel. As relevant to this appeal, Williams claimed that Arrow created a hostile work environment on account of his race and religion, and in support he identified three undated incidents in which managers made offensive jokes or comments. Williams also alleged that the company fired him because he is black. Arrow moved for summary judgment, arguing that Williams's claim of a hostile work environment should fail because he repeatedly returned to Arrow for work, and that he provided no evidence that he was fired because of his race.

Williams countered by offering deposition testimony describing what he viewed as inappropriate comments from managers about race and religion.[1] Williams asserted that on a daily basis he was subjected to racial slurs, and referred generally to "O.J. jokes, Martin Luther King jokes, Farrakhan jokes." Williams described, however, only one specific racial slur: he overheard general manager Phil Fagan refer to an African–American customer as a "nigger." Williams did not say when this incident occurred. He also described two undated comments regarding religion. On one occasion, sales manager Jimmy Samhan, a white Muslim, jokingly invited Williams to a local restaurant operated by black Muslims for pork chops, knowing that Muslims do not eat pork. On another, business manager Bob Williams saw Williams speaking to a female customer dressed in traditional Muslim attire and later asked Williams "what would happen if he pulled his dick out and shook it in her face." In depositions Samhan and Fagan denied making any inappropriate comments or jokes; Bob Williams was not deposed.

Williams also asserted that he was terminated in October 1999 because he is black. The parties agree that Williams's departure followed a car sale that fell through. A customer wanted to buy a car and trade in his van. Williams cinched the sale and drew up the financing paperwork, subject to finalizing the trade-in allowance the next day. When the customer returned the following morning, however, another manager refused to honor the deal, demanding full payment in cash. The customer called manager Bob Hammond to complain, and Hammond summoned Williams to his office to discuss what had gone awry. According to Hammond, Williams was furious that his sale was being questioned and walked out; Williams testified that Hammond suspended him without explanation, and that several days later the dealership's owner fired him over the phone.

The district court granted summary judgment for Arrow. The court held that the three insensitive comments Williams described did not, as a matter of law, create a hostile work environment. The court also held that even accepting Williams's version that he was fired from

1. Williams's brief on appeal embellishes the facts contained in the record, and describes for the first time several incidents of racist or religiously insensitive behavior. Because a party's statement of facts must be supported by evidence in the record, we will not consider these newly alleged incidents and will confine our review to the evidence in the record. *See Dye v. United States*, 360 F.3d 744, 748 (7th Cir.2004).

Arrow and did not leave voluntarily, he had adduced no evidence in support of his discriminatory discharge claim, relying instead on unpersuasive blanket allegations of discrimination. We review the district court's grant of summary judgment *de novo*, construing all facts and making all reasonable inferences in the light most favorable to the non-moving party. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir.2004).

On appeal, Williams first argues, in very general terms, that the district court erred by ruling that the facts he alleged fail to demonstrate a hostile work environment. To survive a motion for summary judgment on a claim of a hostile environment, a plaintiff must offer evidence that the aggravating conduct was "so severe or pervasive as to create an abusive working environment in violation of Title VII." *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 342–43 (7th Cir.2001). This entails both an objective showing that a reasonable person would find the environment hostile or abusive, and a subjective showing that the plaintiff in fact perceived it to be so. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Courts determine whether an environment is hostile or abusive by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

■ The evidence Williams presented fails to show that Arrow managers created an objectively hostile work environment on account of race. Williams's claim is based on a solitary incident in which he overheard a manager refer to a customer as a "nigger." While an "unambiguously racial epithet"—especially this one—is unquestionably serious and offensive, *see Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1047 (7th Cir.2002), Williams was unable to show through specific examples that such comments pervaded the work atmosphere or even were uttered more than once. *See Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 566–67 (7th Cir.2004); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271–72 (7th Cir.2004); *McPhaul v. Bd. of Comm'rs of Madison County*, 226 F.3d 558, 567 (7th Cir.2000). Furthermore, where, as here, harassment is directed at a third party, it has less impact than if it were directed at the plaintiff. *See McPhaul*, 226 F.3d at 567. Thus, this solitary utterance of an offensive epithet directed at another is insufficient to establish a hostile work environment.

■ Similarly, Williams's testimony could not convince a jury that Arrow created a hostile work environment on account of his religion. Williams himself characterized Samhan's invitation to go get pork chops as a "little joke[ ]," and both this statement and Bob Williams's vulgar comment about the female Muslim customer are better characterized as inappropriate and offensive teasing than examples of abuse or hostility. *Compare Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir.2003) (finding no abuse or hostility where plaintiff suffered immature jibes about the sexuality of African men, such as himself), *and Hafford v. Seidner*, 183 F.3d 506, 514 (6th Cir.1999) (mocking Muslim greeting and accusing plaintiff, a prison guard, of inciting a "holy war" did not amount to hostile work environment), *with Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 705–06 (7th Cir.2001) (finding hostility where supervisor made statements such as "I hate everything that you are" and "I know how to put you Jews in your place"), *and Venters*

*v. City of Delphi,* 123 F.3d 956, 976 (7th Cir.1997) (accusations by born-again Christian supervisor that plaintiff had had sex with animals and should commit suicide created hostile environment). And "teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal quotations omitted). We therefore agree that Arrow was entitled to summary judgment on this claim.

Next, Williams attacks the district court's conclusion that he did not make out a *prima facie* case of discriminatory discharge. He contends that the district court impermissibly noted his failure to establish that Arrow treated similarly situated employees outside his class more favorably, an element of a *prima facie* case of racial discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). According to Williams, since Arrow never argued that he could not establish this element, the district court erred by addressing that point *"sua sponte"* in its decision. But Arrow was not required to point out the deficiencies in Williams's *prima facie* case in order for the district court to discuss them; the burden was on Williams to prove all four elements so long as his opponent did not concede that they had been established. *Cf. Wells v. Unisource Worldwide, Inc.,* 289 F.3d 1001, 1006 & n. 1 (7th Cir.2002). And Arrow clearly did not concede the point. It stated, in its reply brief in support of summary judgment, that Williams must establish a *prima facie* case of discrimination for each separate claim, and that he had not even attempted to do so.

Finally, Williams asserts that the district court never ruled on his motion to compel the production of Arrow's business and personnel records, which he insists were necessary to prove discrimination. In fact, however, the record shows that a magistrate judge granted that motion in part and the requested documents were made available to Williams's counsel, who repeatedly failed to keep appointments for reviewing them. Therefore, this contention fails as well.

We have considered Williams's other points, which do not require separate discussion. The district court's order is AFFIRMED.