In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3753

IN RE:

WALTER GEORGE WIESE AND CARLA KAY WIESE,

*Debtors-Appellees*,

*v.*

APPEAL OF:

COMMUNITY BANK OF CENTRAL WISCONSIN,

*Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 C 422—**John C. Shabaz**, *Judge.*

ARGUED SEPTEMBER 8, 2008—DECIDED JANUARY 8, 2009

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Walter and Carla Wiese are dairy farmers, and they borrowed money from Community Bank of Central Wisconsin to expand their dairy operation by building a new barn and buying additional cows. Unfortunately, the expansion of the dairy operation

was not profitable. When the Wieses defaulted on the loan repayment, the Bank commenced foreclosure and replevin actions in state court on the collateral in which the Bank held security interests. The Wieses then filed for Chapter 12 bankruptcy, a voluntary type of bankruptcy specifically designed for family farmers. As part of the Wieses' confirmed plan of bankruptcy, the Wieses and the Bank made certain concessions, one of which (and the reason for this appeal's existence) required the Wieses to release their purported "lender liability" claims against the Bank, arising from the Bank's advice in connection with the loan and the construction of the barn. The Wieses later decided to have the bankruptcy case dismissed, as they had a statutory right to do—but the bankruptcy court determined that there was "cause" for the terms of the confirmed plan to remain binding on the parties. The Wieses appealed to the district court, which reversed the decision of the bankruptcy court. Now the Bank appeals from the district court's decision, and the Wieses seek sanctions against the Bank for bringing this appeal.

## I. Background

Chapter 12 bankruptcy was created "to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." *In re Fortney*, 36 F.3d 701, 703 (7th Cir. 1994) (quoting *In re Kerns*, 111 B.R. 777, 788 (S.D. Ind. 1990)). After a debtor chooses to file a Chapter 12 petition for bankruptcy, creditors file proofs of claim with the bankruptcy court. *See* 11 U.S.C. § 501(a).

The debtor must file a reorganization plan that sets out how the various claims will be paid, and the plan must meet certain statutory requirements. *Id.* §§ 1221-22. The court then holds a confirmation hearing, and a party in interest can object to the confirmation of a plan. *Id.* § 1224. A plan cannot be confirmed without the consent of a holder of a secured claim where the holder does not accept the plan or the debtor does not surrender the collateral, unless (1) the plan provides that the holder retain the lien securing the claim; and (2) the value of property to be distributed to the debtor or trustee under the plan with respect to that claim is not less than the allowed amount of the claim. *Id.* § 1225(a)(5); *In re Krause*, 261 B.R. 218, 222 (Bankr. App. Panel 8th Cir. 2001). Once the plan is confirmed, it is binding on the debtor and the creditors. 11 U.S.C. § 1227(a). However, a debtor can request at any time that the court dismiss the case (unless it has been converted to a Chapter 7 or Chapter 11 bankruptcy), and the court must dismiss it. *Id.* § 1208(b). The debtor cannot waive his right to dismiss the case. *Id.* A dismissal reinstates avoided transfers or voided liens made under certain provisions of the bankruptcy code, vacates certain types of orders made under the code, and "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case," unless the bankruptcy court orders otherwise for "cause." *Id.* § 349(b).

In this case, the Wieses filed for Chapter 12 bankruptcy on January 13, 2006, after the Bank commenced state court foreclosure and replevin actions. The state actions were stayed, and the Bank filed a proof of claim with

the bankruptcy court a few months later. Over the next several months, the Wieses filed a reorganization plan, an amended plan, and a second amended plan. The Bank objected to each plan, and the plans could not be confirmed because the Bank either would not retain all its liens securing the claim or the Bank would not receive the full value for the claim. In November 2006, the Wieses filed an adversary proceeding objecting to the Bank's proof of claim and asserting several pre-petition "lender liability" claims against the Bank. The parties reached an agreement on a third amended plan, which the bankruptcy court confirmed on December 7, 2006.

The reorganization plan included the following terms: the Wieses agreed to release the lender liability claims against the Bank, and the Bank agreed to release a lien held on funds in escrow, forgive default interest, set a cap on attorneys' fees and out-of-pocket expenses, allow a four-month delay prior to the Wieses' re-commencing payment, and re-calculate the Wieses' loan at the contract rate of interest rather than at the higher default rate of interest. Certain liquidation procedures were required if the Wieses defaulted under the plan.

Less than a week after the plan's confirmation, the Wieses filed a motion to vacate the confirmed order and liquidate their assets because a loan program they thought would be available to them was not. In March 2007, the court denied the motion, as well as another motion that the Wieses filed to amend the confirmed plan, noting that "the parties reached an agreement which was placed on the record with full awareness

that the debtors might not qualify for the loan program in question." Consequently, in April 2007, the Wieses moved to dismiss the case, as was their right under § 1208(b). The court granted the motion to dismiss. In determining what effect a post-confirmation dismissal had on the parties' rights and obligations, the bankruptcy court noted that 11 U.S.C. § 349(b) governed and explained that for "cause" to be ordered, there must be an acceptable reason for altering the normal impact of § 349(b). The court concluded:

> "Cause" in this context is usually geared toward protecting rights acquired in reliance upon the bankruptcy. . . . When a debtor seeks the dismissal of a case, the court may properly consider the interests of creditors or other third parties which were gained in the course of, or in reliance upon, the bankruptcy. In this case, the debtors and the creditor negotiated a confirmed plan after a series of contested hearings. The creditor granted the debtors certain concessions, and the debtors agreed to the release of certain claims and various liquidation provisions in the event of a default. To the extent that § 349 might affect the rights obtained as a result of the confirmed plan, the Court finds sufficient "cause" to order otherwise.

*In re Wiese*, No. 06-10053-12, slip op. at 2-3 (Bankr. W.D. Wisc. June 6, 2007) (internal citations omitted).

The Wieses appealed the order. The district court agreed that § 349(b) governed the rights of the parties in a post-confirmation dismissal, and it cited the legislative

history to determine that the purpose of subsection (b) " 'is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.' " *Wiese v. Cmty. Bank of Central Wisc.*, 2007 WL 5445862, at *1 (W.D. Wisc. 2007) (quoting H.R. Rep. No. 95-595, at 338 (1977)). The district court noted that we held in *In re Sadler*, 935 F.2d 918, 921 (7th Cir. 1991), that attempting to avoid the effect or purpose of a statute is not an acceptable reason for finding "cause." *Wiese*, 2007 WL 5445862, at *2. Allowing a confirmed plan to remain binding on the parties after dismissal would rob the debtors of § 1208's unqualified right to dismiss the case—it would essentially serve as a waiver, even though an actual waiver is not permitted by statute. *Id.* Accordingly, since the purpose of the statute would be nullified, the district court concluded that the bankruptcy court's "cause" determination must be vacated. *Id.* The district court noted that now "debtors-appellants are free to pursue any legal claims they may have including those addressed in the confirmed plan." *Id.*

## II. Analysis

In reviewing the district court's decision to reverse the bankruptcy court, we employ the same standard of review that the district court itself used. *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004). Therefore, we review the bankruptcy court's determinations of law de novo and findings of fact for clear error. *In re ABC-Naco, Inc.*, 483 F.3d 470, 472 (7th Cir. 2007). But where the

bankruptcy code commits a decision to the discretion of the bankruptcy court, we review that decision only for an abuse of discretion. *Fortney*, 36 F.3d at 707 (citing *In re Leventhal & Co.*, 19 F.3d 1174, 1777 (7th Cir. 1994)). "[A] court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Corporate Assets, Inc.*, 368 F.3d at 767.

The bankruptcy court's "cause" determination was a decision committed to its discretion. The bankruptcy court did not discuss the underlying legal question— whether § 349(b) would have invalidated the release (or, to use the terms of § 349(b)(3), "revest[ed] the property of the estate in the entity in which such property was vested immediately before the commencement of the case") in the absence of a "cause" determination. Instead it held that "[t]o the extent that § 349 *might* affect the rights obtained as a result of the confirmed plan, the Court finds sufficient 'cause' to order otherwise." *In re Wiese*, No. 06-10053-12, slip op. at 3 (emphasis added). The parties' filings prior to the bankruptcy court's order did not address this question in any substantive way either, though the Bank did write a letter to the court noting that the Wieses' proposed dismissal left the terms of the plan in doubt and suggesting that all the terms should remain binding on both parties. On appeal to the district court, the Wieses argued only that the "cause" determination was wrong but did not address the underlying question; the Bank limited its discussion to the issues raised by the Wieses. The district court, however,

invalidated the "for cause" determination and stated that "debtors-appellants are free to pursue any legal claims they may have including those addressed in the confirmed plan," apparently assuming that § 349(b) abrogated the release. *Wiese*, 2007 WL 5445862, at *2. Forced to address the underlying question for the first time on appeal, the Bank draws a distinction between § 349(b)'s effect on terms of the plan that are executory versus terms of the plan that have already been performed. The Wieses ask that we not entertain the Bank's new arguments. Because we can resolve this appeal based on the decision actually made by the bankruptcy court, we will frame the issue as the bankruptcy court did: To the extent that § 349(b) affects the rights obtained from the confirmed plan, did the bankruptcy court abuse its discretion in determining there was "cause" for the plan to remain binding on the parties?

We have previously discussed "cause" in the context of § 349(b) on one occasion. In *Sadler*, debtors who were family farmers filed a petition for voluntary Chapter 13 bankruptcy a few months prior to legislative enactment of Chapter 12. After Chapter 12 became an option for family farmers, the debtors hoped to convert the bankruptcy from Chapter 13 to Chapter 7 to Chapter 12 (the code prohibited conversion directly from Chapter 13 to Chapter 12). The court denied their motion, and, instead, the court suggested that they dismiss the Chapter 13 case and refile it as a Chapter 12. However, the debtors had avoided a lien on their crops under the Chapter 13 case. When they took the court's advice to dismiss and refile the case, new effective dates attached, so the bank again

claimed an interest in the crops. The bankruptcy court thought it was equitable for the new filing to relate back to the old filing date. On appeal, the district court affirmed on a different theory, using § 349(b) in the dismissal of the Chapter 13 case to find "cause" to avoid reinstating the bank's lien. We held that this approach was forbidden. *Sadler*, 935 F.2d at 920-21. "'Cause' under § 349(b) means an acceptable reason. Desire to make an end run around a statute" that forbids conversion from Chapter 13 to Chapter 12 "is not an adequate reason. . . . It is not part of the judicial office to seek out creative ways to defeat statutes." *Id.* at 921.

In this case, the Bank contends that the bankruptcy court properly considered the history of the parties' negotiations and the concessions granted by the Bank in determining that there was cause for the parties to continue to be bound by the plan. On the other hand, the Wieses contend that the bankruptcy court held that "mere negotiation" of a confirmed plan is sufficient cause. Obviously negotiation alone would not be an acceptable standard for "cause," since every confirmed plan that required the consent of the creditor would involve some degree of negotiation. And indeed, the bankruptcy court did not hold that "mere negotiation" was sufficient; it engaged in a brief discussion of the propriety of considering the interests of creditors which were gained in the course of, or in reliance upon, the confirmed plan. The bankruptcy court noted that the Bank had granted the Wieses certain concessions in return for the Wieses' release of claims and agreement to follow certain liquidation procedures in the case of default. Although the court's

"cause" determination would have been more useful had it noted which concessions it found significant, we can look to the record for "evidence on which the court rationally could have relied." *Corporate Assets, Inc.*, 368 F.3d at 767.

First, we address the bankruptcy court's conclusion that it was proper to look to the interests of the creditors on the dismissal of the case. The court cited one of its own prior cases, *In re Derrick*, 190 B.R. 346 (Bankr. W.D. Wisc. 1995), in which it discussed the legislative history of § 349(b). *In re Wiese*, No. 06-100530-12, slip op. at 2. The legislative history indicated that the purpose of the subsection was to "undo the bankruptcy case, as far as practicable" but "where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case." H.R. Rep. 95-595, at 338 (1977). The court noted that one of the purposes of the bankruptcy code, in addition to providing relief for a debtor, is to "offer equitable treatment to creditors." *Derrick*, 190 B.R. at 351. Finally, the court quoted this court's decision in *Sadler*, in which we discussed a creditor's interest after dismissal: "As things stand, the only claimants to the funds are the [debtors] and the [creditor]. Between the two, the [creditor] has the better claim: the [debtors] borrowed money that they have yet to repay." *Id.* at 351-52 (quoting *Sadler*, 935 F.2d at 921) (alterations in original). The opinion in *Derrick* was well-reasoned, and similar approaches have been taken by other courts. *See, e.g., In re Keener*, 268 B.R. 912, 919 (Bankr. N.D. Tex. 2001) ("Clearly, the drafters intended that a dismissal would return the

bankrupt to its pre-petition status 'as far as practicable,' while also protecting those parties that relied, to their detriment, on the provisions of the confirmed plan."); *In re TNT Farms*, 226 B.R. 436, 442 (Bankr. D. Idaho 1998) ("On prior occasions the Court has used this grant of discretion as a means to avoid the harsh or inequitable results occasioned by the dismissal of a bankruptcy case during which parties have relied upon their status and acquired rights."). It was appropriate for the bankruptcy court to consider the interests of the Bank.

We now look to the record for evidence of the concessions the bankruptcy court considered when it made the "cause" determination. We do not have to look far. The Wieses needed the Bank's consent to confirm the plan, and the Bank was apparently interested in obtaining a release of the lender liability claims. The Wieses induced the Bank to consent to the plan by including the release in their final amended plan. They got what they bargained for—a confirmed plan. In the plan, the Bank agreed (among other things) to give up a lien it had on some funds held in escrow. After confirmation of the plan, the money in escrow was released to the Wieses, and the Bank lost the ability to collect it. The Bank's agreement to give up the lien was made "in reliance on the bankruptcy case," and when the Wieses decided to dismiss the case, it was not inappropriate for the bankruptcy court to consider the harm that dismissal caused to the Bank. The bankruptcy court may have also considered hints of bad faith on the Wieses' part—the record contains references to investigations of "missing" cows or cows sold under the Wieses' children's names, unautho-

rized credit card use after the bankruptcy petition was filed (to the tune of $35,000), and failure to begin the process of liquidating assets after default in accordance with the plan (not to mention the Wieses' desire to vacate the plan six days after its confirmation for failure to obtain a loan that they knew all along they might not be able to obtain).

Despite the evidence in the record to support the bankruptcy court's "cause" determination, the district court held that the determination was, like in *Sadler*, not for an "acceptable reason." The court reasoned that a bankruptcy court could use the cause determination to perform an "end run" around § 1208(b), which requires a court to dismiss the case at any time on request of the debtor. But our concern with performing an "end run" around the statute here is different than in *Sadler*, where the outcome of the district court's decision was to accomplish exactly what the statute forbade—the conversion of a case from Chapter 13 to Chapter 12. Here, § 1208(b) gives the debtor an unqualified right to dismiss the case, but the statute that governs the effect of the dismissal—§ 349(b)—explicitly contemplates that the court can choose to keep some terms binding on the parties where there is cause. That the Wieses' dismissal had ramifications they did not anticipate does not make the bankruptcy court's decision erroneous. *See Sadler*, 935 F.2d at 921 ("The judge was not promising the Sadlers that dismissal and reinstatement would be without consequence."). In sum, the bankruptcy court's "cause" determination was not an abuse of discretion.

### III. Sanctions

The Wieses filed a motion for sanctions against the Bank under Federal Rule of Appellate Procedure 38, which provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is "frivolous" if the "'result is obvious'" or "'the appellant's argument is wholly without merit.'" *Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 662 (7th Cir. 2006) (quoting *Ins. Co. of the W. v. County of McHenry*, 328 F.3d 926, 929 (7th Cir. 2003)).

This case does not warrant sanctions. The result of the Bank's appeal was not obvious, since two courts came to differing conclusions on the issue; nor was the appeal without merit, since the Bank prevailed. The Wieses primarily complain that the Bank introduced new arguments and mischaracterized the opinion of the district court. As mentioned above, the Bank did introduce new arguments on appeal, but they were made directly in response to the district court's opinion, which went a step beyond what either party had argued by holding that § 349(b) wiped out the release. Further, the Bank's descriptions of the district court's reasoning were within the bounds of reasonable interpretation; the arguments were no more misleading than the Wieses' oversimplification that the bankruptcy court held that the "mere negotiation" of a bankruptcy plan was sufficient cause.

We take a moment to comment on the tone of the Wieses' brief, which was often inappropriate. The Wieses

complained *ad nauseam* that the Bank's appeal was frivolous—nine times in the merits brief alone (and many more times in the motion for sanctions)—and suggesting that the Bank was "obstinately" refusing to dismiss its appeal. Appellee Br. 4. The Wieses repeatedly accused the Bank of intentionally distorting the district court's opinion in an attempt to deceive and manipulate this court and "manufacture" issues for appeal. *Id.* at 12, 15. Finally, the Wieses demanded that we put an end to the Bank's "tactics of delay and saddling the Wieses with the unnecessary expense of briefing these arguments*." Id.* at 7. The Wieses' motion for sanctions contains similar unfounded accusations. There is a difference between zealously advocating for one's clients and unnecessarily disparaging opposing counsel. The Wieses' counsel is advised to revisit the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, *available at* http://www.ca7.uscourts.gov/Rules/rules.htm#standards.

## IV.  Conclusion

The bankruptcy court's decision that there was "cause" for the terms of the confirmed plan to remain binding on the parties was within its discretion; therefore, we REVERSE the decision of the district court, and we DENY the Wieses' motion for sanctions.