**In re Bobby Dean SOPER, Debtor.**

**Bankruptcy No. 91–41136–12.**

United States Bankruptcy Court,
D. Kansas.

April 5, 1993.

---

William E. Metcalf of Metcalf & Justus, Topeka, KS, for debtor.

Jackie A. Rapstine, Asst. U.S. Atty., Topeka, KS, for the U.S. on behalf of its agency, Farmers Home Admin.

John E. Foulston, Wichita, KS, U.S. Trustee.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Debtor appears by his attorney, William E. Metcalf of Metcalf & Justus, Topeka, Kansas. The United States of America, on behalf of its agency, the Farmers Home Administration, appears by its attorney, Jackie A. Rapstine, Assistant United States Attorney.

This proceeding is core under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

The United States of America, on behalf of its agency, the Farmers Home Administration ("FmHA"), filed an objection to the debtor's Chapter 12 plan, contending (1) that the debtor did not qualify as a farmer under Chapter 12 because he had not received more than 50 percent of his income in the preceding year from a farming operation, and (2) that the income of a non-debtor spouse may not be included in determining feasibility of the debtor's plan. The debtor responded to this objection and the Court directed that the parties file briefs on the issues.

The briefs indicate that the first issue raised by the FmHA—the eligibility of the debtor for Chapter 12—has been resolved by agreement and therefore has not been briefed by the parties.

As an undersecured creditor, the FmHA holds an allowed secured claim and an allowed unsecured claim. According to the plan, its total claim is $65,750.73, which is secured by land valued at $48,000.00. The FmHA's unsecured claim computes to $17,-750.73. 11 U.S.C. § 506(a).

The plan proposes to pay the $48,000.00 allowed secured claim annually for 30 years at 5.25 percent interest, a yearly payment of $3,212.02. The FmHA has retracted an earlier objection to these repayment terms, preferring instead to rest its dissent solely on the effect on plan feasibility of excluding the non-debtor spouse's income from the plan payments.

The debtor's new wife did not join with him in the bankruptcy petition. But, he has filed a cash flow budget that includes her income and expenses. It shows an annual net income, before plan payments, of $9,915.00. The debtor's plan will require approximately $6,798.00 in annual payments to two secured creditors and one priority creditor. If these cash flow numbers are used, there is sufficient income to

satisfy the plan payments and still leave $3,117.00 each year for distribution to unsecured creditors. The FmHA has not challenged the propriety of debtor's cash flow numbers.

The cash flow statement indicates that debtor's farm income will be $11,250.00 per year while his personal earnings from off-farm employment will be $10,000.00 per year. His wife's personal earnings from off-farm employment are projected to be $14,880.00 per year.

The cash flow statement lists three general categories of expenses. The first, "Farm Expenses," consists of fuel, seed, fertilizer, herbicides, pesticides, other chemicals, repairs, crop insurance, real estate taxes, and combine and/or drying expense. These expenses total $4,331.50. The second category, "Expenses," consists of electricity, propane, water, telephone, insurance, food, gasoline, and child support. These are the joint living expenses of the debtor and his wife and total $1,157.00 per month or $13,884.00 per year. The third category, "Wife's Expenses," consists of the wife's separate car payment, loan payment, and miscellaneous expenses. These expenses total $660.00 per month or $7,920.00 per year. A simplified recapitulation of the cash flow statement is as follows:

| | | |
|---|---|---|
| Farm Income from crops | $11,250.00 | |
| Less Farm Expenses | (4,331.00) | |
| Net Farm Income | | $6,919.00 |
| Debtor's non-farm income | 10,000.00 | |
| Wife's income | 14,800.00[1] | |
| Total non-farm income | $24,800.00 | |
| Less Expenses ($1,157.00) | (13,884.00) | |
| Less Wife's Expenses ($660.00) | (7,920.00) | |
| Net non-farm income | | 2,996.00 |
| Total available for plan payments | | $9,915.00 |

---

The FmHA says that the non-debtor spouse's income cannot be included in the debtor's cash flow and that without this income, the debtor's plan lacks feasibility because there is insufficient cash to meet all expenses.[2] In support, the FmHA cites

1. There is a mathematical error in the cash flow statement. The wife's income is projected at $14,880.00 per year, but when added to the debtor's $10,000.00 non-farm income, $80.00 was dropped, incorrectly making the total of the two amounts $24,800.00 on the statement, rather than the correct total of $24,880.00. The Court has disregarded this error in restating the numbers in this opinion.

2. How the FmHA reached this conclusion is murky. The cases cited below suggest that if the Court were to find that the non-debtor spouse's income could not be included in the debtor's cash flow, it would be appropriate, if not necessary, to adjust the couple's living expenses to exclude those of the wife from the budget. For example, if the wife's $14,800.00 per year income were not included in the plan, her separate expenses of $660.00 per month, or $7,920.00 per year, would surely be removed.

In addition, some unknown portion of the couple's joint expenses, those attributable to the non-debtor wife, would also be removed. If half the $13,884.00 joint expenses were cut along with the "Wife's Expenses" totaling $7,920.00 per year, the total budget expense reduction would be $14,862.00. Under this scenario, the debtor's plan would still have $9,977.00 to pay plan claims of $6,798.00, and the debtor would be "able to make all payments under the plan and ... comply with the plan" as required by the confirmation standard at § 1225(a)(6). If the division of expenses were made on a more radical basis, say two-thirds to the husband and one-third to the wife, the debtor would still have $7,663.00 to pay plan claims of $6,798.00. Even under this more unlikely apportionment, it appears that the debtor's plan probably would be feasible. Without evidence, the Court cannot make the division, but unless there are extraordinary facts, reasonable minds

*In re Fogle*, 87 B.R. 493 (Bankr.N.D.Ohio 1988). The case shows that in ruling on a motion to dismiss, the bankruptcy court stated, "Debtor may utilize various sources of income in funding his plan. . . . However, in projecting income, Debtor may only look to the income resulting from his own individual effort." *Id.* at 496 (citation omitted). However, the court elected to defer ruling on the question of including outside income in the plan until the confirmation hearing, so the quoted statement was mere *dicta.*

The applicable statute gives little guidance. It provides at § 1222(a) of Title 11: "The plan shall (1) provide for the submission of all or such portion of *future earnings or other future income of the debtor* to the supervision and control of the trustee as is necessary for the execution of the plan. . . ." (Emphasis added.) The word "income" as used in this statute is given a meaning that includes funds from sources in addition to the debtor's personal earnings. The scope of the word "income" is far from clear when it comes to funding a Chapter 12 plan and there appears to be no legislative history to help the Court divine its meaning.

The question has been addressed under Chapter 13, the provisions of which were the model for Chapter 12. As pointed out by one Chapter 13 commentator:

> Most courts include the debtor's spouse's income in the budget for purposes of calculating projected disposable income under § 1325(b) notwithstanding that the spouse is not a debtor in the Chapter 13 case. The theory is that the nonfiling spouse's income is available to defray the debtor's reasonably necessary expenses, thus freeing a larger portion of the debtor's separate income for satisfaction of unsecured claims. Creditors have argued successfully that it would be unfair to allow the debtor's separate income to be used for the family necessities and not count a nonfiling spouse's income which would remain "disposable' to the debtor and uncommitted to the plan.

would probably agree that the final division

1 K. Lundin, *Chapter 12 Bankruptcy* § 5.30 at 5–98f to 98g (1992) (footnote omitted), citing *In re Belt*, 106 B.R. 553 (Bankr. N.D.Ind.1989) (the disposable income test requires inclusion of the income and expenses of the non-debtor spouse), and *In re Saunders*, 60 B.R. 187 (Bankr.N.D.Ohio 1986).

An example of a case in which the creditor took an opposing stance to that of the FmHA in this case, and which also reflects the thinking quoted above, is *In re Kern*, 40 B.R. 26 (Bankr.S.D.N.Y.1984). The creditor objected because the non-debtor spouse's income was *not* included in the debtor's amended Chapter 13 plan. The debtor's original plan indicated income for the debtor of $433.00 per month, income from the non-debtor wife of $975.00, and family expenses of $1,235.00 per month. The debtor subsequently filed an amended plan which indicated his monthly income would be $1,415.74. However, the amended plan withdrew his wife's net income without changing the family expense figure. The creditor argued that the failure to include the non-debtor spouse's income in the budget resulted in the creditors paying for the wife's living expenses, at least in part. The court denied confirmation of the plan, finding that requiring the creditors to subsidize part of the non-debtor spouse's living expenses was a violation of the Code. *Id.* at 28–29.

Other cases addressing the subject of what income and expenses should be included in a plan budget are: *In re Clay*, 98 B.R. 44, 46 (Bankr.N.D.Fla.1989), wherein the court stated, "If . . . the debtor were married, then his spouse's income would be properly considered in determining his net available income for payment under the plan;" *In re Harmon*, 118 B.R. 68 (Bankr. E.D.Mich.1990), in which the court held that the debtor's cash flow projection was reasonable where he had divided his living expenses equally with his non-debtor spouse; and *Matter of Velis*, 123 B.R. 497, 511–12 (D.N.J.1991), where the court noted a number of situations under the Bankruptcy Code where a non-debtor spouse's in-

ratio would not be far from 50–50.

come and assets would be relevant, including a determination of disposable income.

The Court sees no great problem with the fact that the wife is not legally bound to continue to make plan payments, as it appears was a concern in *In re Hoskins,* 74 B.R. 51 (Bankr.C.D.Ill.1987), and as the FmHA contends. The FmHA's brief states that since the wife is not a debtor in the case, "any payment by her ... could not be enforced by this court." (United States' Second Objection to Second Amended Chapter 13 Plan filed January 7, 1992, at 2.) But, the same can be said for the debtor himself. Chapters 12 and 13 provide a mechanism for a debtor to agree to make payments to creditors over a period of time. If the payments are made, the debtor obtains a discharge from the legal obligations owing his creditors. If the payments are not made, no such discharge is granted unless the debtor can show "undue hardship." Confirmation of a plan binds the debtor's creditors to accept the plan payments during its term and subjects them to a stay of action against the debtor during that time. If the debtor defaults on plan payments and the case is dismissed, no discharge is granted to the debtor and the creditors are free to pursue collection of their full claims in other forums. The same result will prevail if the wife's failure to contribute her income to the plan results in default by the debtor. This Court sees no validity to the argument that it must have some enforcement rights over the wife when, in fact, it has none over the debtor who is himself free to fail to pay if he chooses, subject to the consequences.

By voluntarily including the non-debtor wife's income in his budget, the debtor has committed it as part of his "projected disposable income" in which the FmHA will share as an unsecured claim holder. Without committing the wife's income as disposable income, the debtor would not be entitled to confirmation of his plan under § 1225(b) of the Code since the FmHA, the holder of an unsecured claim, has objected to plan confirmation:

> (b)(1) If the trustee or *the holder of an allowed unsecured claim objects to*

*the confirmation of the plan,* then the court *may not approve the plan* unless, as of the effective date of the plan—
> (A) ...
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan....

(Emphasis added.)

The Court finds that the non-debtor spouse's income can be devoted to the plan as debtor's "disposable income"; that "the debtor will be able to make all payments under the plan and to comply with the plan" as required by § 1225(a)(6); and that the plan is confirmable under § 1225(b)(1).

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.