[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11654
_____

D.C. Docket No. 8:16-cv-00051-EAK-MAP


FIRST NATIONAL BANK OF ONEIDA, N.A.,

Plaintiff-Appellant,

versus

DONALD H. BRANDT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 24, 2018)

Before WILLIAM PRYOR and JULIE CARNES, Circuit Judges, and ANTOON,[*] District Judge.

PER CURIAM:

_____
[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

First National Bank of Oneida, N.A. ("First National") brought this action against Donald Brandt to collect the remaining amounts due on several loans after the real estate securing those loans was sold and the proceeds of those sales did not cover the outstanding balances. Brandt, who had earlier filed a Chapter 11 bankruptcy petition, moved to dismiss First National's claims on the ground that First National could not state a claim for a deficiency because it had not complied with certain provisions of Brandt's previously confirmed Chapter 11 plan. The district court agreed with Brandt and dismissed all of First National's deficiency claims that related to loans made before Brandt filed his Chapter 11 petition. First National appeals that dismissal.

After the parties had filed their briefs in this appeal, Brandt moved the bankruptcy court to dismiss his Chapter 11 case. The bankruptcy court granted the motion to dismiss. Given this dismissal of his underlying bankruptcy petition, none of Brandt's debts or liabilities were discharged and the automatic stay was terminated. Brandt and First National disagree as to whether that dismissal has any effect on this case, but neither party has meaningfully briefed the issue. In light of what is potentially a significant development in the case, we vacate the district court's dismissal of First National's deficiency claims and remand for the district court to consider, in the first instance, whether the dismissal of Brandt's

2

Chapter 11 case without a discharge has any effect on First National's ability to pursue its deficiency claims in this case.

## I.    BACKGROUND

### A.    Brandt's Bankruptcy Proceedings

In July 2009, Brandt filed a voluntary Chapter 11 bankruptcy petition. When he filed the petition, Brandt owned, managed, and rented approximately 50 single-family homes and duplexes in Ohio, Tennessee, Arizona, and Florida. He was also in the business of selling and developing raw land in Tennessee.

One of Brandt's creditors was First National Bank. Brandt owed First National more than $1.3 million on real-estate loans. First National filed eleven proofs of claim in Brandt's bankruptcy case—ten for the real-estate loans and one for a car loan that is not at issue in this appeal. In its proofs of claim, First National asserted that its real-estate loans were fully secured.[1] Brandt did not object to any of First National's proofs of claim. *See* 11 U.S.C. § 502(a) (providing that a claim is deemed allowed unless a party in interest objects).

Brandt filed his Chapter 11 plan in February 2010. He grouped all of First National's real-estate loans into a single class—Class 19—"to the extent allowed

---

[1]  Seven of the proofs of claim explicitly asserted that the property securing the relevant loan was worth more than the amount of the loan. Three did not list a value for the collateral, but identified the entire amount of the claim as secured.

as . . . secured claims[s] under" 11 U.S.C. § 506.  No other claims were included in

that class.

The plan further provided that Brandt would issue a promissory note to First

National secured by $150,000 worth of real estate.[2]  In exchange for Brandt

assuming this additional obligation, First National would deem Brandt current on

his real-estate loans through August 2010.  Brandt would then resume his

payments to First National in September 2010.

The plan also established Class 45—a single class of all unsecured claims

allowed under 11 U.S.C. § 502.  In its description of Class 45, the plan stated:

"**Any secured creditor who has filed a secured claim and claims an entitlement**

**to an unsecured claim must file an amended claim seeking entitlement to an**

**unsecured claim by 30 days after the confirmation hearing (including any**

**continued dates)**."  (Bolded emphasis in original).

The bankruptcy court confirmed Brandt's Chapter 11 plan on December 31,

2011.  Believing itself oversecured at that time as to its claims, First National did

---

[2]  First National asserts that the promissory note was for post-petition interest, and its assertion is supported both by the fact that the note brought Brandt current on his obligations to First National through August 2010 and by statements that First National's attorney made at the confirmation hearing on Brandt's Chapter 11 plan.  At the confirmation hearing, First National's attorney explained to the bankruptcy court that Brandt had granted First National a lien on approximately nine previously unencumbered properties worth $150,000 to cover interest that had accrued on six of First National's real-estate loans.  Brandt had already issued a promissory note—for $142,353.65—and a deed of trust for the relevant real estate to First National in May 2010.  The bankruptcy court approved and ratified that transaction.

not amend its proofs of claim within 30 days after confirmation to claim an entitlement to an unsecured claim.

By February 2013, which was a little over a year later, Brandt had defaulted on his obligations to First National:  both on the pre-petition real-estate loans and on the post-petition promissory note.  First National moved the bankruptcy court to lift the automatic stay so it could foreclose on the real estate securing its loans to Brandt.  The bankruptcy court granted the requested relief.

First National subsequently sold the real estate securing its loans.  After applying the proceeds to the outstanding balances on Brandt's loans, Brandt still owed First National more than $1.2 million.  According to First National, more than $180,000 of that $1.2 million deficiency was related to the post-petition promissory note, while the rest related to the pre-petition real-estate loans.

At a hearing on November 3, 2015, First National moved the bankruptcy court to lift the automatic stay to allow it to pursue *in personam* relief against Brandt.  Brandt did not oppose the motion.  Accordingly, the bankruptcy court granted the motion and lifted the automatic stay specifically to allow First National "to pursue its rights and claims (if any) against Brandt."

First National then brought this case seeking to collect from Brandt the remaining amounts due on both the pre-petition real-estate loans and the post-petition promissory note.

B.    **Procedural History of this Case**

First National filed its original complaint in January 2016.  Brandt moved to dismiss that complaint.  In his motion to dismiss, Brandt argued, among other things, that First National could not seek an unsecured deficiency judgment related to its pre-petition real-estate loans because First National "did not take the steps delineated in Class 45 [of the Chapter 11 plan] to assert an unsecured deficiency claim."  Specifically, First National did not file an amended claim seeking entitlement to an unsecured claim within 30 days after the confirmation hearing.  Brandt further argued that allowing First National to obtain a deficiency judgment would "disrupt [the plan's] distribution scheme" and cause Brandt to default on his payments to other creditor classes.

In an order entered on May 13, 2016, the district court concluded that First National's original complaint stated a plausible claim for a deficiency only with respect to the post-petition promissory note.  It reasoned that, because the note was executed post-petition, any deficiency claim arising under the note would not have been included in Class 45 of Brandt's Chapter 11 plan, which dealt only with pre-petition unsecured claims.  However, the district court concluded that any deficiency claims related to the pre-petition real-estate loans "necessarily would have been classified in Class 45."  Because First National had not alleged that it "compl[ied] with the Plan's requirements pertaining to Class 45 deficiency

6

claims," the district court dismissed First National's deficiency claims related to the pre-petition real-estate loans.  The district court instructed First National that if it wished to file an amended complaint, it "must attach copies of the Plan, Confirmation Order, and Proofs of Claim, and allege compliance with the provisions relating to Class 45 deficiency claims."

First National then filed an amended complaint that, like the original complaint, sought the remaining amounts due on both the pre-petition real-estate loans and the post-petition promissory note.  First National attached copies of the plan, the confirmation order, and the relevant proofs of claim.  It did not, however, allege compliance with the provisions relating to Class 45 deficiency claims.  Instead, First National argued that it was not required to comply with those provisions because Brandt did not assert in his bankruptcy case that First National's claims were undersecured.  First National contended that because, by all accounts, it was oversecured during the relevant time period and because Brandt's Chapter 11 plan brought Brandt current on his obligations to First National through August 2010, First National "was not required to file a contingent unsecured claim in a speculative unknown amount to preserve its right to receive the full payment promised by the Plan, in the event that Brandt should perhaps default at some later date on his Plan obligations."

7

The district court again dismissed First National's deficiency claims related to the pre-petition real-estate loans.  The court reiterated that dismissal was warranted because First National had failed to allege compliance with the provisions of Brandt's Chapter 11 plan relating to Class 45 deficiency claims, as the court had directed it must do to state a viable claim.  Explaining its insistence on First National's compliance with the plan's requirements, the court stated that "the theory of recovery articulated in the [amended complaint was] antithetical to the dual purposes underlying the Bankruptcy Code," which are to give the debtor a fresh start and to promote equality of distribution among creditors.  *See* 5 Collier on Bankruptcy ¶ 541.01, at 541-10 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017) (identifying "the fundamental purposes of the Bankruptcy Code" as "the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code").[3]  As the district court saw it:

> Under [First National's] theory, a secured creditor would never have an incentive to pursue an unsecured deficiency claim in bankruptcy. Rather, a secured creditor could file a fully secured claim, sit back, and assuming the debtor later fails to pay its claim in full, reforeclose its lien and pursue a deficiency claim against the debtor.  If permitted, such a practice would undermine debtors' ability to obtain a "fresh start," while at the same time permit secured creditors to obtain unsecured pre-petition deficiency claims without having to share in the distribution provided to general unsecured creditors.

---

[3]  Because we vacate the district court's order on other grounds, we take no position on the soundness of the district court's reasoning.

8

The district court granted First National leave to file a second amended complaint to pursue only its claim under the post-petition promissory note.

First National filed a second amended complaint in compliance with the district court's order. Brandt failed to answer the second amended complaint and the clerk entered a default against him. After the district court denied Brandt's motion to set aside that entry of default, Brandt and First National stipulated to the entry of a judgment against Brandt for $180,000 related to the post-petition promissory note. Judgment was entered on March 28, 2017. First National then brought this appeal.

However, on December 14, 2017, after this appeal had been fully briefed, Brandt moved the bankruptcy court to dismiss his bankruptcy case. The bankruptcy court granted the motion and dismissed the case. Given this dismissal, the automatic stay was terminated and "[n]one of [Brandt's] debts, liabilities, or obligations [were] discharged."

First National asked us to take judicial notice of the dismissal of Brandt's bankruptcy case. We granted that motion.

## II.    **DISCUSSION**

The district court dismissed First National's claim for a deficiency judgment related to its pre-petition real-estate loans because First National had not filed an amended proof of claim in Brandt's bankruptcy case, as required by the Chapter 11

9

plan in order to seek an unsecured claim. Later, after this appeal was fully briefed, Brandt's Chapter 11 case was dismissed without a discharge of any of his debts.

Accordingly, this appeal presents two issues for our review. The first question is the one that the parties briefed: whether a secured creditor whose pre-petition debt is oversecured at the time of the Chapter 11 filing—and who therefore fails to identify any part of the debt as unsecured—is precluded from later seeking a deficiency judgment after the debtor has failed to comply with the terms of the plan and the collateral no longer fully secures the debt. The second question arose after the parties had filed their briefs, when Brandt dismissed his bankruptcy petition. That question is whether, by dismissing his Chapter 11 case without a discharge, Brandt is now foreclosed from arguing that First National cannot seek a deficiency judgment related to its pre-petition real-estate loans based on First National's failure originally to identify any portion of these loans as being undersecured. Notably, because Brandt's Chapter 11 case was dismissed after this appeal was already fully briefed, the effect of that dismissal, as well as the facts and circumstances surrounding it, have not been meaningfully briefed by the parties.

The dismissal of Brandt's Chapter 11 case without a discharge—after issuance of the district court order on appeal here—is a potentially significant event that may affect the ultimate disposition of this case and on which there has

been insufficient briefing.  For that reason, we vacate the district court's dismissal

order[4] and remand for that court to consider this newly raised issue and, if

necessary, to develop a fuller factual record.  Although we do not now decide what

impact Brandt's dismissal of his bankruptcy petition may ultimately have, we offer

some preliminary discussion of the issues for the district court to consider in

reaching its decision.

According to the pertinent statute, once a Chapter 11 plan is confirmed, it is

binding on both the debtor and his creditors.  *See* 11 U.S.C. § 1141(a).  The plan

cannot be revoked unless, within 180 days after confirmation, it is shown that the

plan was procured by fraud.[5]  *See* 11 U.S.C. § 1144.  In a corporate Chapter 11

proceeding, confirmation of the plan also discharges any debts that arose before the

date of confirmation.  11 U.S.C. § 1141(d)(1)(A).  Thus, as bankruptcy courts

within this circuit have noted, "a confirmed plan of reorganization creates a

contractual relationship between the debtor and the creditor" where "[t]he

creditor's pre-confirmation claim is subsumed in and replaced by the new contract

created by the confirmed plan."  *In re Winn-Dixie Stores, Inc.*, 381 B.R. 804, 807

(Bankr. M.D. Fla. 2008) (quoting *In re New River Shipyard, Inc.*, 355 B.R. 894,

---

[4]  Because we vacate the district court's dismissal order on the basis of changed circumstances, we do not reach the merits of that order at this time.

[5]  Notably, the standard for revoking a Chapter 11 plan is the same as the standard for revoking a Chapter 12 or Chapter 13 plan.  *See* 11 U.S.C. §§ 1144, 1230, 1330; *see also* 8 Collier on Bankruptcy ¶ 1144.02[2], at 1144-4 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017).

11

912 (Bankr. S.D. Fla. 2006)), *aff'd*, 414 B.R. 764 (M.D. Fla. 2009), *aff'd*, 639 F.3d 1053 (11th Cir. 2011).  In other words, as a result of confirmation and discharge, "[t]he initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan."  *Id.* (quoting *In re New River Shipyard, Inc.*, 355 B.R. at 912).

Before 2005, the same result occurred when the Chapter 11 debtor was an individual:  that is, confirmation of the Chapter 11 plan also discharged any debts that arose before the date of confirmation.  *See* 11 U.S.C. § 1141 (2000); *In re Depew*, 115 B.R. 965, 966, 973 (Bankr. N.D. Ind. 1989).  In 2005, however, Congress amended § 1141 to provide that, when the debtor is an individual rather than a corporation or other business entity, "confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."  11 U.S.C. § 1141(d)(5)(A) (emphasis added); *see also* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 321(d), 119 Stat. 23, 95–96 (adding 11 U.S.C. § 1141(d)(5)).

Of course, Brandt is an individual, not a corporation, and he is an individual who dismissed his Chapter 11 bankruptcy case prior to any discharge of his debts by the bankruptcy court.  Moreover, given the amended § 1141's emphasis on the

12

need for a discharge order in an individual's Chapter 11 case, and the fact that Chapter 13 likewise conditions a discharge on the debtor's fulfillment of his obligations under the confirmed plan, *see* 11 U.S.C. § 1328(a), opinions discussing the dismissal of Chapter 13 cases without a discharge could perhaps become relevant to a determination of whether and how the dismissal of Brandt's Chapter 11 case without a discharge affects the enforceability of his confirmed Chapter 11 plan. *See, e.g.*, *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413 (9th Cir. 1985); *In re Templeton*, 538 B.R. 578, 587 (Bankr. N.D. Ala. 2015); *In re Irons*, 173 B.R. 910, 910–11 (Bankr. E.D. Ark. 1994); *In re Groves*, 27 B.R. 866, 867–68 (Bankr. D. Kan. 1983).

We further note that, under 11 U.S.C. § 349(b) and unless the bankruptcy court, for cause, orders otherwise, the dismissal of a bankruptcy case:

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of [the Bankruptcy Code];

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of [the Bankruptcy Code], or preserved under section 510(c)(2), 522(i)(2), or 551 of [the Bankruptcy Code]; and

(C) any lien voided under section 506(d) of [the Bankruptcy Code];

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of [the Bankruptcy Code]; and

13

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . .

11 U.S.C. § 349(b).

Thus, insofar as the dismissal of a bankruptcy case is concerned, the aim of § 349(b) is to return the parties, as far as practicable, to the financial positions they occupied before the case was filed. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017) (noting that dismissal of a Chapter 11 case "aims to return to the prepetition financial status quo"); S. Rep. No. 95-989, at 49 (1978) ("The basic purpose of [§ 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." (capitalization omitted)), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5835; *see also HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 487 (9th Cir. 2015) (noting that, upon dismissal of a Chapter 13 case, the "debtor loses any benefits promised in exchange for the successful completion of the plan—whether *in personam*, such as discharge, or *in rem*, such as lien voidance," and further asserting that, in effect, "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies available to him"); 3 Collier on Bankruptcy ¶ 349.01[2], at 349-3 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017).

14

We acknowledge, however, that § 349(b) does not provide that dismissal of a bankruptcy case without a discharge vacates a previously confirmed Chapter 11 plan or otherwise renders that plan unenforceable by the debtor.  Stated another way, the vacating of a previously confirmed plan is not one of the consequences expressly identified as occurring upon the dismissal of a bankruptcy case.  *See* 11 U.S.C. § 349(b); *United States v. Standard State Bank*, 91 B.R. 874, 876–79 (W.D. Mo. 1988).  But that silence does not necessarily mean that the confirmed plan can survive the dismissal of the bankruptcy case.  Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context.").

Therefore, we leave it for the district court, in the first instance, to determine the extent to which Brandt's dismissal of his Chapter 11 case without a discharge impacts the merits of First National's claim.

## III.    CONCLUSION

For the reasons explained above, we **VACATE** the district court's dismissal of First National's claim for a deficiency judgment related to the pre-petition real-estate loans and **REMAND** for the district court to consider, in the first instance, whether and to what extent the dismissal of Brandt's Chapter 11 case without a discharge affects the ultimate disposition of this action.

15