ELIZABETH A. KOVACHEVICH, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court for consideration on remand by the Eleventh Circuit. (Dkt. 69). Petitioner, First National Bank of Onieda, N.A. ("FNBO "), originally brought this action against Defendant, Donald Brandt ("Brandt "), to collect the remaining amounts due on several loans after the real estate securing those loans was sold and the proceeds of those sales did not cover the outstanding balances. Brandt, who had earlier filed a chapter 11 bankruptcy petition, moved to dismiss FNBO's claims on the grounds that FNBO could not state a claim for a deficiency because it had not complied with certain provisions of Brandt's previously confirmed chapter 11 plan. This Court agreed with Brandt and dismissed FNBO's deficiency claims that related to loans made before Brandt filed his chapter 11 petition. FNBO appealed this dismissal and, after the parties had filed their briefs, Brandt moved the bankruptcy court to dismiss his chapter 11 case. The bankruptcy court granted Brandt's motion to dismiss. Given the dismissal of his underlying bankruptcy petition, none of Brandt's debts or liabilities were discharged and the automatic stay was terminated. The Eleventh Circuit, in light of what it considers a potentially significant case development, vacated this Court's dismissal of FNBO's deficiency claims and remanded for this Court to consider, in the first instance, whether the dismissal of Brandt's chapter 11 case without a discharge has any effect of FBNO's ability to pursue its deficiency claims in this case. First National Bank of Oneida, N.A. v. Brandt, 887 F.3d 1255, 1262 (2018).
I. Background
A. Brandt's Bankruptcy Proceedings
In July 2009, Brandt filed a voluntary chapter 11 bankruptcy petition. 887 F.3d at 1256. When he filed the petition, Brandt owned, managed, and rented approximately 50 single-family homes and duplexes in Ohio, Tennessee, Arizona, and Florida. Id.
*665 He was also in the business of selling and developing raw land in Tennessee. Id.
FNBO was one of Brandt's creditors and Brandt owed FNBO more than $ 1.3 million on real-estate loans. Id. FNBO filed eleven proofs of claim in Brandt's bankruptcy case-ten for the real-estate loans and one for a car loan that is not at issue here. Id. In its proofs of claim, FNBO asserted that its real-estate loans were fully secured. Id. Brandt did not object to any of FNBO's proofs of claim. See 11 U.S.C. § 502(a) (providing that a claim is deemed allowed unless a party in interest objects). Brandt filed his chapter 11 plan in February 2010. 887 F.3d at 1256. He grouped all of FNBO's real-estate loans into a single class-Class 19-"to the extent allowed as...secured claim[s] under" 11 U.S.C. § 506. Id. at 1256-57. No other claims were included in that class. Id. at 1257.
The plan further provided that Brandt would issue a promissory note to FNBO secured by $ 150,000 worth of real estate.[2] Id. In exchange for Brandt assuming this additional obligation, FNBO would deem Brandt current on the loans through August 2010. Id. Brandt would then resume his payments to FNBO in September 2010. Id.
The plan also established Class 45-a single class of all unsecured claims allowed under 11 U.S.C. § 502. 887 F.3d at 1257. In its description of Class 45, the plan stated: "Any secured creditor who has filed a secured claim and claims an entitlement to an unsecured claim must file an amended claim seeking entitlement to an unsecured claim by 30 days after the confirmation hearing (including any continued dates) ." (Bolded emphasis in original). Id.
The bankruptcy court confirmed Brandt's chapter 11 plan on December 31, 2011. Id.; (Dkt. 33-6). Believing itself oversecured at that time as to its claims, FNBO did not amend its proofs of claim within 30 days after the plan's confirmation to claim an entitlement to an unsecured claim. 887 F.3d at 1257.
By February 2013, which was a tittle over a year later, Brandt had defaulted on his obligations to FNBO: both on the pre-petition real-estate loans and on the post-petition promissory note. Id. FNBO moved the bankruptcy court to lift the automatic stay so it could foreclose on the real estate securing its loans to Brandt. Id. The bankruptcy court granted the requested relief. Id.
FNBO subsequently sold the real estate securing its loans. Id. After applying the proceeds to the outstanding balances on Brandt's loans, Brandt stilt owed FNBO more than $ 1.2 million. 887 F.3d at 1257. According to FNBO, more than $ 180,000 of that $ 1.2 million deficiency was related to the post-petition promissory note, while the rest related to the pre-petition real-estate loans. Id.
At a hearing on November 3, 2015, FNBO moved the bankruptcy court to lift the automatic stay to allow it to pursue in personam relief against Brandt. Id.
*666 Brandt did not oppose the motion. Id. The bankruptcy court granted the motion and lifted the automatic stay specifically to allow FNBO to pursue its rights and claims (if any) against Brandt." Id.; (Dkt. 17-3). FNBO then brought this case seeking to collect from Brandt the remaining amounts due on both the pre-petition real-estate loans and the post-petition promissory note. 887 F.3d at 1257 ; (Dkt. 1).
B. Procedural History of this Case
FNBO filed its original complaint in January 2016. (Dkt. 1). Brandt moved to dismiss that complaint arguing, among other things, that FNBO could not seek an unsecured deficiency judgment related to its pre-petition real estate loans because FNBO "did not take the steps delineated in Class 45 [of the chapter 11 plan] to assert an unsecured deficiency claim." (Dkt. 9). Specifically, FNBO did not file an amended claim seeking entitlement to an unsecured claim within 30 days after the confirmation hearing. Brandt further argued that allowing FNBO to obtain a deficiency judgment would "disrupt [the plan's] distribution scheme" and cause Brandt to default on his payments to other creditor classes. Id.
In an order entered on May 13, 2016, this Court concluded that FNBO's original complaint stated a plausible claim for deficiency only with respect to the post-petition promissory note. (Dkt. 21). The Court ruled that any deficiency claims related to the pre-petition real-estate loans "necessarily would have been classified in Class 45." Id. at 7. Because FNBO had not alleged "compl[iance] with the Plan's requirements pertaining to Class 45 deficiency claims," this Court dismissed FNBO's deficiency claims related to the pre-petition real-estate loans and instructed FNBO that if it wished to file an amended complaint, it "must attach copies of the Plan, Confirmation Order, and Proofs of Claim, and allege compliance with the provisions relating to Class 45 deficiency claims." Id.
FNBO then filed an amended complain that, like the original complaint, sought the remaining amounts due on both the pre-petition real-estate loans and the post-petition promissory note. (Dkt. 22). FNBO attached copies of the plan, the confirmation order, and the relevant proofs of claim. Id. It did not, however, allege compliance with the provisions relating to Class 45 deficiency claims. Instead, FNBO argued that it was not required to comply with those provisions because, by all accounts, it was oversecured during the relevant time period and because Brandt's chapter 11 plan brought Brandt current on his obligations to FNBO through August 2010. Id. Thus, FNBO claims it "was not required to file a contingent unsecured claim in a speculative unknown amount to preserve its right to receive the full payment promised by the Plan, in the event that Brandt should perhaps default at some later date on his Plan obligations."Id. ¶ 43.
This Court again dismissed FNBO's deficiency claims related to the pre-petition real-estate loans, reiterating that dismissal was warranted because FNBO failed to allege compliance with provisions of Brandt's chapter 11 plan relating to Class 45 deficiency claims, as the Court had directed it must do to state a viable claim. (Dkt. 33). This Court granted FNBO leave to file a second amended complaint to pursue only its claim under the post-petition promissory note. Id.
FNBO filed a second amended complaint in compliance with this Court's Order. (Dkt. 33). Brandt failed to answer the second amended complaint and the clerk entered a default against him. (Dkt. 41). After this Court denied Brandt's motion to set aside that entry of default, Brandt and *667 FNBO stipulated to the entry of a judgment against Brandt for $ 180,000 related to the post-petition promissory note. (Dkt. 60). Judgment was entered on March 28, 2017. (Dkt. 62). FNBO then brought this appeal.
However, on December 14, 2017, after both parties had fully briefed the appeal, Brandt moved the bankruptcy court to dismiss his bankruptcy case. 887 F.3d at 1259 ; (BK Dkt. 860). The bankruptcy court granted the motion and dismissed the case. 887 F.3d at 1259 ; (BK Dkt. 866). According to the dismissal, the automatic stay was terminated and "[n]one of [Brandt's] debts, liabilities, or obligations [were] discharged." Id. FNBO requested the Eleventh Circuit take Judicial Notice of the dismissal of Brandt's bankruptcy case. The Eleventh Circuit granted that motion, vacating this Court's decision on the basis of changed circumstances and remanding for this Court to consider whether the dismissal of Brandt's chapter 11 case without a discharge-after issuance of the Order on appeal here-is a potentially significant event that affects the ultimate disposition of this case. 887 F.3d at 1259.
II. Discussion
According to the pertinent statute, once a chapter 11 plan is confirmed, it is binding on both the debtor and the creditor. See 11 U.S.C. § 1141(a). The plan cannot be revoked unless, within 180 days after confirmation, it is shown that the plan was procured by fraud.[3] In a corporate chapter 11 proceeding, confirmation of the plan also discharges any debts that arose before the date of confirmation. 11 U.S.C. § 1144(d)(1)(A). Thus, as bankruptcy courts within this circuit have noted, "a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor" where "[t]he creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan." In re Winn-Dixie Stores, Inc., 381 B.R. 804, 807 (Bankr. M.D. Fla. 2008) (quoting In re New River Shipyard, Inc., 355 B.R. 894, 912 (Bankr. S.D. Fla. 2006)aff'd, 414 B.R. 764 (M.D. Fla. 2009), aff'd, 639 F.3d 1053 (11th Cir. 2011) ). In other words, as a result of confirmation and discharge, "[t]he initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan." Id.
Before 2005, it was clear that the same result occurred when a chapter 11 debtor was an individual: that is, confirmation of the chapter 11 plan also discharged any debts that arose before the date of confirmation. See 11 U.S.C. § 1141 (2000) ; In re Depew, 115 B.R. 965, 966, 973 (Bankr. N.D. Ind. 1989). In 2005, however, Congress amended section 1141(d) to provide that for an individual chapter 11 debtor, "confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." 11 U.S.C. § 1141(d)(5)(A) ; see also Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA "), Pub. L. No. 109-8, § 321(d), 119 Stat. 23, 95-96 (adding 11 U.S.C. § 1141(d)(5) ).
The Eleventh Circuit suggests that the 2005 amendment to section 1141 may deem opinions discussing the dismissal of chapter 13 cases without a discharge relevant to a determination of whether and *668 how the dismissal of Brandt's chapter 11 case without a discharge affects the enforceability of his confirmed chapter 11 plan. 887 F.3d at 1260-61. FNBO argues that the dismissal of Brandt's bankruptcy case without a discharge of the underlying debts means that Brandt's chapter 11 plan no longer precludes FNBO from seeking relief with respect to its pre-petition claims. Brandt, on the other hand, argues that a strict reading of the bankruptcy code, even in light of the changes to section 1144, and public policy underlying the bankruptcy code necessitate the survival of his chapter 11 plan upon dismissal of his bankruptcy case. These arguments are addressed in turn.
A. Chapter 12 and Chapter 13 Caselaw
FNBO argues that the 2005 amendment means that Brandt's confirmed chapter 11 plan does not survive dismissal because it now functions as a chapter 12 or chapter 13 confirmed plan, in which discharge is not granted to the debtor upon plan confirmation. (Dkt. 74 at 5-8). Caselaw cited by the Eleventh Circuit demonstrates that a confirmed chapter 13 plan is no longer binding upon dismissal of the chapter 13 case. Nash v. Kester (In re Nash), 765 F.2d 1410, 1413 (9th Cir. 1985) (holding that dismissal of a chapter 13 case without discharge of the debts vacates a confirmed plan); In re Templeton, 538 B.R. 578, 587 (Bankr. N.D. Ala. 2015) ("In the event the case is dismissed and [chapter 13] benefits are lost, the plan and its order of confirmation no longer have a binding effect"); In re Irons, 173 B.R. 910, 910-11 (Bankr. E.D. Ark. 1994) (finding dismissal of bankruptcy case negated the effects of the chapter 13 petition and creditor entitled to claim interest that accrued during the prior bankruptcy case.); In re Groves, 27 B.R. 866, 867-68 (Bankr. D. Kan. 1983) (holding that dismissal of a chapter 13 case without a discharge of the underlying debts revests property rights in the entity in which such property was vested immediately before the commencement of the chapter 13 case). According to FNBO, if a chapter 12 case is dismissed before the grant of discharge, then pre-petition claims are no longer altered by the confirmed plan, and those creditors are allowed to pursue the collection of pre-petition claims in other forums. (Dkt. 74 at 5-6) (citing In re Soper, 152 B.R. 985, 989 (Bankr. D. Kan. 1993) ). Brandt claims that chapter 12 and chapter 13 are substantially different than chapter 11; thus, the Soper analysis does not extend to chapter 11. (Dkt. 76 ¶ 14). In Soper, the bankruptcy court articulated that the term "income", which was at issue in the case, was unclear in the context of funding a chapter 12 plan but that the issue had been fully addressed in a chapter 13 plan. Id. at 988. The bankruptcy court noted that the provisions of chapter 13 were the model for chapter 12 and applied chapter 13 caselaw to the chapter 12 plan. Id. Thus, Soper supports FNBO's argument that the effect of a dismissal without discharge of a bankruptcy case on a confirmed plan under chapter 12 and chapter 13 may apply under similar facts in the chapter 11 context, as suggested by the Eleventh Circuit. 887 F.3d at 1260-61.
FNBO argues that the chapter 12 result should control in the post-BAPCPA chapter 11 context. (Dkt. 74 at 6) (citing Christie, Trustee v. First State Bank of Stratford B.A. (In re Keener), 268 B.R. 912 (Bankr. N.D. Tex. 2001) ). In Keener, the bankruptcy court determined that confirmed chapter 12 plan language, which provided that mortgaged property also secured repayment of additional debts owed to the mortgage lender, was no longer binding after dismissal of the chapter 12 case. 268 B.R. at 920. According to FNBO, the lender in Keener argued that a confirmed plan *669 in a dismissed chapter 12 case should be treated just like a pre-2005 confirmed plan in a dismissed chapter 11 case; namely, that a chapter 12 plan remains binding after dismissal of the chapter 12 case. (Dkt. 74 at 7) (citing 268 B.R. at 919-20 ). The court disagreed with this argument, observing that "[c]onfirmation of a chapter 12 plan does not result in a discharge being granted to the debtor as does confirmation of a chapter 11 plan." 268 B.R. at 919. The Keener court reasoned that acquired bankruptcy rights are an extension of the debtor's ability to abide by terms of the bankruptcy code; thus, the debtor who is unwilling or unable to comply with the code should not receive the benefits of the code once the case is dismissed. 268 B.R. at 920 (citing In re Derrick, 190 B.R. 346 (Bankr. W.D. Wis. 1995) ). Moreover, the Keener court explicitly stated that this analysis did not extend to a chapter 11 case because dismissal occurs upon confirmation in such case, noting that the effect of the confirmation of a plan varies between chapter 12 and pre-2005 chapter 11 plans. 268 B.R. at 919-20. FNBO claims that because the statute now directs that discharge no longer occurs upon confirmation, Keener supports a finding that Brandt's plan does not survive the dismissal of the bankruptcy case without discharge.
Citing In re Oakhurst Lodge, Inc. and In re T & A Holdings, LLC, Brandt counters that recent case law demonstrates that chapter 11 plans continue to bind after dismissal and creditors are left with their remedies under the confirmed plan. 582 B.R. 784, 794 (Bankr. E.D.Cal. 2018) and 2016 WL 7105903 (Bankr. N.D. Ill Nov. 3, 2016). However, both cases involve a corporate debtor. In a corporate chapter 11 proceeding, conformation of the plan also discharges any debts that arose before the date of confirmation. 11 U.S.C. § 1144(d)(1)(A). Similarly, Brandt posits that the U.S. v. Ramirez court concluded that a confirmed chapter 11 plan survives dismissal intact. 291 B.R. 386 (Bankr. N.D.Tex. 2002). But, Ramirez involved individual debtors who filed a chapter 11 bankruptcy case in 1987 and had a chapter 11 plan confirmed in 1988, long before the 2005 statutory change. Id. at 389. Thus, Brandt's cases are not persuasive because they do not address the impact of the 2005 amendment applicable to individual debtors, which is presently before this Court.
Given the 2005 amendment, which directs that confirmation of a chapter 11 plan no longer confers discharge upon an individual debtor, caselaw interpreting chapter 12 and chapter 13 plans support a finding that FNBO may seek to enforce its pre-petition rights against Brandt.
B. Section 349(b): Restoration to Pre-Petition Status Quo
Section 349(b) negates, as it was intended to, the consequences of the filing of the petition in bankruptcy where the case is dismissed without discharge. See generally In re Nash, 765 F.2d 1410, 1414 (9th Cir. 1985). In Nash, the court noted that the legislative history of section 349 clearly intended that a dismissal would return the debtor to its pre-petition status "as far as practicable," while also protecting those parties that relied, to their detriment, on the provisions of the confirmed plan. 765 F.2d at 1414.[4]
FNBO argues that the dismissal of Brandt's bankruptcy case reinstates the *670 underlying debts owed to FNBO, including any deficiency rights because, "insofar as the dismissal of a bankruptcy case is concerned, the aim of § 349(b) is to return the parties, as far as practicable, to the financial positions they occupied before the case was filed." (Dkt. 74 at 9). FNBO contends that a recent Supreme Court case addressing a pre-confirmation chapter 11 dismissal supports is position because "[a] dismissal typically 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case'-in other words, it aims to return to the pre[-]petition financial status quo." (Dkt. 74 at 9) (citing Czyzewski v. Jevic Holding Corp., --- U.S. ----, 137 S.Ct. 973, 979, 197 L.Ed.2d 398 (2017) ).
On the other hand, Brand argues that section 349(b) supports his claim that FNBO's pre-petition claims are not enforceable. Brandt states that such finding comports with the Eleventh Circuit's order and recent Seventh Circuit caselaw which states that section "349(b) does not provide that dismissal of a bankruptcy case without a discharge vacates a previously confirmed Chapter 11 plan or otherwise renders that plan unenforceable by the debtor." (Dkt. 76 ¶¶ 19-20) (citing --- U.S. ----, 137 S.Ct. 973, 197 L.Ed.2d 398 (2017) ; 887 F.3d at 1261 ; Weise v. Cmty Bank of Cent. Wis., 552 F.3d 584, 590 (7th Cir. 2009) ). FNBO articulates that Weise in fact supports FNBO's, and not Brandt's, position. (Dkt. 77 at 8-9). The Weise court held that section 349(b) explicitly contemplates that the bankruptcy court can chose to keep certain confirmed plan terms binding where there is cause. 552 F.3d at 591 (finding bankruptcy court did not abuse its discretion in determining specified sections of the confirmed plan remained binding on the parties notwithstanding dismissal). That is, the bankruptcy court has the discretion to condition certain plan provisions binding upon dismissal of the bankruptcy case. Id. By dismissing Brandt's bankruptcy case without discharging Brandt's debts and without mention of binding the parties to plan provisions, the bankruptcy court chose not to keep specified plan terms binding. See 887 F.3d at 1256 ; (BK Dkt. 866).
Accordingly, the Court finds that section 349(b)'s aim to restore the parties to the pre-petition status quo supports a finding that FNBO may seek to enforce its pre-petition claims against Brandt.
C. Public Policy
Legislative history illustrates that BAPCPA was a "comprehensive package of reform measures," enacted in response to the increase in consumer bankruptcy filings and to protect the interests of creditors. H.R. Rep. No. 109-31, pt. 1 at 2 (2005). Specifically, Congress noted the following reasons for the 2005 bankruptcy reforms: rapid escalation of bankruptcy filings; significant losses associated with bankruptcy filings due to creditors' inability to collect; and loopholes and incentives in the present bankruptcy system that allow and even sometimes encourage personal filings and abuse. Id. at 10-18. These reasons indicate that the public policy reason driving the 2005 bankruptcy reforms was, at least in part, to protect and empower creditors.
However, Brandt argues that public policy necessitates that the confirmed chapter 11 plan survives the dismissal without discharge of his bankruptcy case. Specifically, Brandt contends that FNBO conflates the definition of "fresh start" and "discharge," and claims the two are separate terms with separate meanings in law and history. (Dkt. 76 ¶ 16). According to Brandt, Congress "breath[es] effectiveness into chapter 11 for debtors" by allowing a fresh start even in the absence of discharge.
*671 Id. ¶ 15. Brandt asserts that he received a limited fresh start upon the confirmation of his chapter 11 plan because he did not receive a discharge, which prevents him from avoiding his obligations despite the survival of his plan beyond dismissal. Id. ¶ 22. Brandt outlines various potentially negative consequences of dismissal, including the possibility of "phantom income" arising from the dismissal or interest that accrued on unsecured claims during the pendency of a plan in a dismissed case, to argue that a confirmed plan that survives dismissal of a bankruptcy case without discharge will continue to incentivize debtors toward plan completion and debt discharge. Id. ¶ 22. Alternatively, according to Brandt, the concept of a fresh start goes to the debtor's ability for a financial rebirth, which does not require a discharge if a debtor is able to reorganize and restructure his debts pursuant to a chapter 11 plan. Id. ¶ 17. Yet, Brandt's arguments do not address the need for Congress to amend the statute to change the requisite conditions for a grant of discharge to an individual debtor. Furthermore, as noted by FNBO, Brandt cites only cases involving either a corporate debtor or a pre-2005 individual debtor: all cases in which discharge was granted upon plan confirmation. (Dkt. 77 at 6-11). Thus, Brandt's arguments are unpersuasive, and the Court finds that public policy supports a finding that FNBO may seek to enforce its pre-petition rights.
Accordingly, the Court finds that under the facts of this case, Brandt's confirmation plan no longer precludes FNBO from pursuing its pre-petition claims.
III. Conclusion
Upon consideration of the foregoing, the Court GRANTS Plaintiff leave of thirty (30) days to file a third amended complaint to pursue its pre-petition claims in accordance with this Amended Order. This will be the operative complaint in this matter. Defendant is directed to file an answer or otherwise respond to the third amended complaint within the normal course.
In light of this Amended Order, the Court ORDERS that Defendant's Motion to Dismiss the Amended Complaint or in the Alternative to Strike Amended Complaint (Dkt. 27) is DENIED AS MOOT .
DONE and ORDERED in Tampa, Florida, this 17th day of October, 2018.

FNBO asserts that the promissory note was for post-petition interest, and its assertion is supported both by the fact that the note brought Brandt current on his obligations to FNBO through August 2010 and by statements that FNBO's attorney made at the confirmation hearing of Brandt's chapter 11 plan. At the confirmation hearing, FNBO's attorney explained to the bankruptcy court that Brandt had granted FNBO a lien on approximately nine previously unencumbered properties worth $ 150,000 to cover interest that had accrued on six of FNBO's real-estate loans. Brandt had already issued a promissory note-for $ 142,353.65-and a deed of trust for the relevant real estate to FNBO in May 2010. The bankruptcy court approved and ratified that transaction.

Notably, the standard for revoking a chapter 11 plan is the same as the standard for revoking a chapter 12 or chapter 13 plan. See 11 U.S.C. §§ 1144, 1230, 1330 ; see also 8 Collier on Bankruptcy ¶ 1144.02[2]. at 1144-4 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017).

Neither party argues that they relied to their detriment upon the bankruptcy order. Brandt asserts that because of the plan's confirmation, he "was able to refinance and restructure his indebtedness to FNBO." (Dkt. 76 ¶ 18). However, Brandt does not articulate facts sufficient to demonstrate that he relied to his detriment on the plan.